[No. A053704. First Dist., Div. Two. Jan. 14, 1992.]

CLIFTON IMACHI, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Francis J. Stillman and G. Robert Kane for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, N. Eugene Hill, Assistant Attorney General, Jose R. Guerrero and Landra E. Rosenthal, Deputy Attorneys General, for Defendant and Respondent.

OPINION

KLINE, P. J.—Clifton Imachi appeals from the denial of a petition for writ of mandate by which he challenged the decision of respondent Department of Motor Vehicles (DMV) to suspend his driver's license for driving with a blood-alcohol content greater than .08 percent. He contends that respondent's decision was based upon improper evidence and that the hearing violated his right to due process. We find merit in the former contention and reverse.

### STATEMENT OF THE CASE AND FACTS

Appellant was arrested for driving under the influence of alcohol at 1:15 a.m. on January 22, 1991. On a "DL 367" form,[1] the arresting officer, Michael A. Branch, recorded his observation of appellant weaving from left to right within his traffic lane and crossing into the adjacent lane and noted that appellant displayed bloodshot/watery eyes, slurred speech and unsteady gait and smelled of alcohol. The form further indicated that appellant submitted to a blood test to determine his blood-alcohol concentration. Appellant was issued an administrative per se order of suspension/revocation temporary license endorsement notifying him that his privilege to operate a motor vehicle would be suspended or revoked effective 45 days from the date of arrest because the officer believed the results of the blood test would show a blood-alcohol concentration of .08 percent or greater. In accordance with instructions in boldface type on the DL 367 form to submit a "DL 367A" for blood and urine test results within 20 days, Branch completed a supplemental report on January 25 which reported test results showing a blood-alcohol concentration of .08 percent. This form included the officer's statement under penalty of perjury that he had reviewed the chemical test results and that the information on the form was true and correct.

---

[1] A police officer who arrests any person for driving under the influence in violation of Vehicle Code section 23152 or 23153 must forward to the DMV a sworn report including all information relevant to the enforcement action on a form furnished or approved by the DMV. (Veh. Code, § 23158.2.) The form utilized for this purpose is designated "DL 367" by the DMV.

Appellant requested a hearing on the suspension of his driving privilege, which was held on February 26, 1991. The hearing officer received into evidence five exhibits: (1) the officer's January 22 DL 367 statement; (2) the administrative per se order of suspension; (3) the results of a breath test and the citation showing appellant's arrest for violation of Vehicle Code section 23152; (4) the officer's supplemental DL 367A statement; and (5) a computer printout of appellant's driving record. Appellant objected to introduction of these documents on the ground that he had been denied due process because he had not been able to obtain the investigative report of the incident or the blood test results before the hearing and, more specifically, objected to the officer's supplemental statement on the basis that there was no foundation as to the time the sample was taken, accuracy of the test, training of the tester and procedures followed. Appellant's counsel noted he was concerned because the breath test, which on its face indicated it was invalid because the sample was introduced at an improper time, showed a blood-alcohol concentration of .07 percent, within the legal limit. Appellant introduced no evidence. The DMV affirmed the one-year suspension.

On March 15, appellant filed a petition for writ of mandamus in the San Mateo County Superior Court. After a hearing on April 12, judgment was entered on April 26 denying the petition.

A timely notice of appeal was filed on May 14, 1991.

## DISCUSSION

Formal DMV hearings are governed by the Administrative Procedures Act. (Gov. Code, §§ 11370, 11501.) Government Code section 11513 provides in pertinent part: "(b) Each party shall have these rights: to call and examine witnesses, to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues . . . ; to impeach any witness . . . ; and to rebut the evidence against him or her. . . . [¶] (c) The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. *Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. . . .*" (Italics added.)

Appellant contends that sole reliance on the supplemental DL 367A report in this case to prove he was driving with blood-alcohol concentration

exceeding .08 percent violated Government Code section 11513. He relies upon *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532 [189 Cal.Rptr. 512, 658 P.2d 1313], in which the court held an accident report filed by a citizen involved in a traffic accident as required by Vehicle Code section 16000 could not, in and of itself, support the suspension of a driver's license in a formal DMV hearing. Daniels's driver's license was suspended for failure to file the required accident report after a hearing at which the only evidence presented was the report of the other driver. The court rejected the suggestion that this report fell within the business record exception to the hearsay rule (Evid. Code, § 1271) because, as a report by a citizen, it was not made "in the regular course of business" (*ibid.*) and did not bear the requisite indicia of trustworthiness. (33 Cal.3d at p. 537.)[2] The court also rejected the suggestion that a clear legislative authorization to allow use of the accident report as the sole basis to support a license suspension could be found in former Vehicle Code section 14108, which provided that at formal hearings the DMV " 'shall consider its official records.' " (*Id.*, at p. 538.) The court stated that "[t]he legislative mandate of Government Code section 11513 against sole reliance on hearsay evidence is emphatic," the language of Vehicle Code section 14108 does not express a clear intent to supercede Government Code section 11513 and, unlike statutes clearly authorizing exceptions to the hearsay rule, Vehicle Code section 14108 "does not reflect any factors providing the necessary competency, reliability, and trustworthiness that would transform the [accident] report into legally sufficient evidence." (*Id.*, at pp. 538-539.)

That the report in question in the present case is that of a police officer rather than a private citizen significantly distinguishes this case from *Daniels*. Indeed, several cases have concluded that a police officer's DL 367 statement is sufficient proof for suspension of a driver's license at an "implied consent hearing," where pursuant to Vehicle Code section 13353 suspension is based upon the driver's refusal to submit to a test of his or her blood-alcohol concentration. (*Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1374-1376 [240 Cal.Rptr. 281]; *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44, 51-56 [181 Cal.Rptr. 613]; *Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 76-78 [179 Cal.Rptr. 379,

---

[2]Evidence Code section 1271 makes admissible evidence of a writing made as a record of an event when "(a) [t]he writing was made in the regular course of a business; [¶](b) [t]he writing was made at or near the time of the act, condition, or event; [¶] (c) [t]he custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) [t]he sources of information and method and time of preparation were such as to indicate its trustworthiness."

31 A.L.R.4th 905].)[3] Contrary to respondent's characterization, however, these cases are not dispositive of the present one.

Under Vehicle Code section 13353, the DMV must suspend or revoke a driver's privilege to operate a motor vehicle upon receipt of an officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Vehicle Code section 23152 or 23153 and the person had refused to submit to or did not complete a test to determine the alcoholic or drug content of his or her blood at the time of a lawful arrest after being requested by the officer to do so. *Snelgrove* and *Fisk* held that an officer's statement under section 13353 (a DL 367 statement) is sufficient in and of itself to support suspension or revocation of a driver's license because, although hearsay, the statement falls within the public employee records exception to the hearsay rule. (*Snelgrove, supra,* 194 Cal.App.3d at pp. 1374-1375; *Fisk, supra,* 127 Cal.App.3d at pp. 76-79; see *Mackler* v. *Alexis, supra,* 130 Cal.App.3d at pp. 55-56.)[4] This exception makes admissible a writing recording an act, condition or event if the writing "was made by and within the scope of duty of a public employee," "at or near the time of the act, condition, or event" and "[t]he sources of information and method and time of preparation were such as to indicates its trustworthiness." (Evid. Code, § 1280.) ▮ An officer's Vehicle Code section 13353 statement meets these criteria because it is made by a public employee within the scope of his or her duty and at or near the time of the event and the source of information—the officer's firsthand observations— indicate trustworthiness. (*Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1375; *Fisk, supra,* 127 Cal.App.3d at p. 77.) Moreover, "the statutory presumption of duty regularly performed (Evid. Code, § 664) shifts the foundational, method-of-preparation burden in this situation," requiring the licensee to show that the officer failed in his or her duty to observe and correctly report the events described in the statement. (*Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1375; see *Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d 72, 77.)

The conclusion of these cases that the officer's statement falls within the public employee records exception to the hearsay rule was premised on the

---

[3]*Daniels* itself noted that an officer's statement under Vehicle Code section 13353 would qualify under exceptions to the hearsay rule for business records (Evid. Code, § 1271) or public employee records (Evid. Code, § 1280), but found it unnecessary to determine whether sole reliance on the officer's report in an implied consent hearing would be permissible. (33 Cal.3d at p. 541.)

[4]Several cases have found statutory authorization for reliance on the officer's hearsay statement in Vehicle Code section 14108. (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d at pp. 51-55; *Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 104-107 [177 Cal.Rptr. 175]; *Frankhauser* v. *Orr* (1968) 268 Cal.App.2d 418, 423 [74 Cal.Rptr. 61].) As noted in *Snelgrove, supra,* 194 Cal.App.3d at page 1373, this conclusion is irreconcilable with the Supreme Court's determination that Vehicle Code section 14108 does not authorize sole reliance on a hearsay report.

fact that the officer's report was based on firsthand observations. (*Snelgrove, supra*, 194 Cal.App.3d at p. 1375; *Fisk, supra*, 127 Cal.App.3d at p. 77.) *Snelgrove* specifically noted that the statement did not contain hearsay except for the driver's own admissions. (194 Cal.App.3d at p. 1375.) In the present case, by contrast, the officer's statement reports the results of a blood test not performed by the officer and so not within the officer's personal knowledge. The officer's sworn statement that he saw the test results and was accurately reporting them could not attest to the accuracy of the test results themselves or the propriety of procedures employed in obtaining them.

 Appellant urges that the evidence of blood-alcohol concentration in the present case lacks "competency, reliability, and trustworthiness" (*Daniels, supra*, 33 Cal.3d at p. 541) because respondent presented no foundation for the blood test results; that is, no evidence to establish that the test apparatus was in proper working order, the test was properly administered and the operator competent and qualified. (See *People* v. *Adams* (1976) 59 Cal.App.3d 559, 561 [131 Cal.Rptr. 190].) We disagree with appellant's implicit assumption that the DMV must present such foundational evidence at every formal administrative suspension hearing in the absence of any evidence the test in question was not properly performed. Chemical tests to determine blood-alcohol concentration at the time of arrest are performed by forensic laboratories which must comply with procedures set out in the California Code of Regulations. (Health & Saf. Code, § 436.50; Cal. Code Regs., tit. 17, §§ 1215-1220.4.) These regulations include requirements for licensing of forensic laboratories and analysts, collection and handling of samples and methods of analysis. Methods of analysis must be in accord with specified standards of performance and procedure (including the requirement that instruments used for alcohol analysis be in good working order and be routinely checked for accuracy and precision (Cal. Code Regs., tit. 17, § 1220.2, subd. (a)(5)) as well as a quality control program adopted by the Department of Health Services. (Cal. Code Regs., tit. 17, §§ 1220.1, 1220.2, & 1220.3.) The actual written report of a blood test performed by a licensed forensic laboratory on behalf of a law enforcement agency would presumably fall within the public employee records exception to the hearsay rule: The record of the test result would be "made by and within the scope of duty of a public employee," "at or near the time of the act, condition, or event" and the requisite indicia of trustworthiness would be supplied by the fact that the analyst was reporting firsthand observations as well as by the

presumption of official duty regularly performed. (Evid. Code, § 664.)[5] ▬▬▬▬ Accordingly, faced with a report of chemical test results, the burden would be on the licensee to demonstrate that the test was not properly performed.[6]

The problem in the present case is that the blood test results were put in evidence only through the hearsay statement of the officer. While the statement is admissible as a public employee record to the extent it reports the officer's firsthand observations (*Snelgrove, supra*, 194 Cal.App.3d 1375; *Fisk, supra*, 127 Cal.App.3d at p. 77), the hearsay within the statement could not be the sole basis for suspension of appellant's driver's license. (Gov. Code, § 11513; see *Daniels, supra*, 33 Cal.3d at p. 538.)[7]

Given our conclusion that the officer's statement was inadmissible as the sole proof of appellant's blood-alcohol concentration, we need not consider appellant's additional arguments. ▬ It may be noted, however, that there is no merit in appellant's claim that he was denied due process by the hearing officer's failure to offer him a continuance for the purpose of "curing the defects in the evidence offered by the Department." If appellant felt a continuance was necessary, it was incumbent upon him to request one. (*Scott*

---

[5]Whether or not the forensic laboratory in question was itself a public entity, the analyst performing chemical tests for a law enforcement agency would be a "public employee" within the statutory definition of that term, which includes "an officer, agent, or employee of a public entity." (Evid. Code, § 195.)

[6]Appellant's apparent suggestion that the department must lay a foundation pursuant to *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240] and *Frye* v. *United States* (D.C. Cir. 1923) 293 F. 1013 [54 App. D.C. 46, 34 A.L.R. 145] borders on the absurd. A *Kelly-Frye* foundation is required before a court may admit evidence based upon a *new* scientific method of proof. (*People* v. *Municipal Court (Sansone)* (1986) 184 Cal.App.3d 199, 201 [228 Cal.Rptr. 798].) Blood tests to determine blood-alcohol level are nothing new (see 1 Jefferson, Evidence Benchbook (Supp. 1990) § 21.6, p. 215) but have been a legislatively recognized means of testing blood-alcohol levels for more than 20 years. (See Veh. Code, § 23157, former Veh. Code § 13353, added Stats. 1965, 1st Ex. Sess. 1966, ch. 138, § 1; *People* v. *Municipal Court (Sansone), supra*, 184 Cal.App.3d at p. 201.)

[7]Respondent notes that circumstantial evidence other than chemical test results is admissible to establish that a driver had the proscribed level of blood alcohol at the time of the offense. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 266, fn. 10 [198 Cal.Rptr. 145, 673 P.2d 732].) The officer's statement here related observations of appellant weaving as he was driving and displaying bloodshot and watery eyes, the odor of alcohol, an unsteady gait and slurred speech. Respondent does not contend, however, that reliance by the hearing officer on the arresting officer's hearsay statement regarding the blood test was permissible because it was only used "for the purpose of supplementing or explaining other evidence." (Gov. Code, § 11513.) Where, as here, an objective test scientifically establishing the proscribed blood-alcohol level is improperly considered, an appellate court cannot assume the trial court did not rely primarily upon it. Given the "emphatic" mandate of Government Code section 11513 against sole reliance on hearsay evidence (*Daniels, supra*, 33 Cal.3d at p. 538) and the fact that the test result was clearly the critical piece of evidence establishing that appellant's blood-alcohol concentration exceeded the legal limit, no such contention would be persuasive.

v. *Pierce* (1990) 221 Cal.App.3d 654, 655-656 [271 Cal.Rptr. 9] [referee not required to offer licensee continuance to subpoena arresting officer].)

The judgment of the trial court is reversed and the matter remanded to the trial court with directions to grant appellant's petition and issue a peremptory writ commanding the department to set aside its order of suspension and proceed in accordance with the views expressed herein. Respondent shall bear the costs on appeal.

Smith, J., and Peterson, J., concurred.