[No. G012841. Fourth Dist., Div. Three. Mar. 24, 1994.*]

MAUREEN JEAN WHEELER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

*Review granted June 16, 1994. Review dismissed and opinion ordered published June 15, 1995.

■■■■■■■■■

**COUNSEL**

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Interim Assistant Attorney General, Martin H. Milas, Angela Sierra and Anne Hunter, Deputy Attorneys General, for Defendant and Appellant.

Goldfein, Schwartzberg & Stark and Richard Schwartzberg for Plaintiff and Respondent.

**OPINION**

SILLS, P. J.—The Department of Motor Vehicles (the DMV) has a state-approved form (DS 367A) for reporting chemical test results to the DMV when a police officer administratively suspends a licensee's driving privilege pursuant to Vehicle Code section 13353.2 (driving with a blood-alcohol concentration of 0.08 percent or more).[1] The form requires the test results to be sworn. For reasons which are never explained, the Orange County Sheriff-Coroner Department crime laboratory uses its own homegrown form for reporting chemical test results to the DMV. The local form does not require the test results to be sworn.

Here, the DMV suspended Maureen Jean Wheeler's driving privilege based upon an unsworn blood test report from the Orange County crime laboratory. Because we hold that under section 23158.2 the results of a chemical test must be sworn, we affirm the judgment of the trial court granting a peremptory writ of mandate commanding the DMV to set aside its decision suspending Wheeler's driving privilege under sections 13353.2 and 23158.5.

**FACTS**

California Highway Patrol Officer A. W. Lassos observed Wheeler traveling southbound on the Santa Ana Freeway at 12:35 a.m. on February 5,

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

1992, at an excessive speed. According to the officer's sworn DMV statement, Wheeler displayed symptoms of intoxication, including bloodshot/watery eyes, odor of alcoholic beverage, unsteady gait and slurred speech. She also failed the field sobriety tests. The officer arrested Wheeler at 12:45 a.m. for violation of section 23152 (driving under the influence of alcohol and/or blood-alcohol concentration of 0.08 percent or more).

Officer Lassos took Wheeler to the Orange County jail where Wheeler submitted to a blood test. According to the Orange County crime laboratory's "forensic alcohol examination report," which is the critical document in this case, a laboratory technician named Zannitto drew blood at 1:10 a.m. that morning, and gave the sample to someone named Breen. It is unclear how the sample made it to the laboratory, but later that day an analyst named Eck tested a blood sample, which analysis yielded a blood-alcohol content concentration of 0.145 percent. That sample was also analyzed that day by another analyst named Vallercamp, again resulting in a figure of 0.145 percent. Initials (supposedly of the analysts) were scribbled next to the figures. At the bottom of the report was a "statement of certification" which provided: "We, the above mentioned analysts, do certify, under penalty of perjury, under the laws of the State of California, that the above blood/urine analyses were performed during the regular course of our duties, and that this is a true and correct copy thereof. We further certify that we are qualified to perform these analyses, pursuant to Title 17 of the California Code of Regulations, and that the equipment used in arriving at the above results was in proper working order at the time we performed these analyses." However, there was no signature line for the certification, and the analysts' signatures did not appear anywhere on the form.[2]

Wheeler requested an administrative per se hearing under section 13558, subdivision (b)(2). At the hearing, Wheeler's counsel objected to the admission of the officer's statement and the unsworn blood test report, but the hearing officer overruled the objections. Wheeler did not testify; instead, she introduced the testimony of Darrell Clardy, a forensic toxicologist and former supervising criminalist with the Orange County crime laboratory. Clardy, who the DMV stipulated was an expert witness, testified that the blood test report was invalid and unreliable because, among other things, it

---

[2]Not content to eliminate the signature and date line, the Orange County crime laboratory also changed some of the language found in the state-approved DMV form. The state form provides: "I certify, under penalty of perjury, under the laws of the State of California, that the above blood or urine analysis was performed during the regular course of my duties, and is a true and correct copy thereof. I further certify that I am a licensed ( ) forensic alcohol supervisor ( ) forensic alcohol analyst qualified to perform these analyses pursuant to Title 17 of the California Code of Regulations, and that the equipment used in arriving at the results was in proper working order at the time this analysis was performed."

was neither signed nor dated by the analysts. In his view, the analysts' failure to sign and date the statement of certification meant they were unwilling to certify that they had followed the procedures under title 17 of the California Code of Regulations. Clardy theorized that the analysts might have been unwilling to sign the certification because although the Orange County crime laboratory has several methods available to it for analyzing blood-alcohol content levels, the laboratory only has one approved method under title 17 of the Code of Regulations. And, based on the information contained in the blood test report, Clardy thought it was highly possible that different methods and different instruments were used, suggesting that at least one of the tests done on the blood sample here was probably done by an unapproved method. The DMV offered no evidence in rebuttal to Clardy's testimony.

Following the close of the hearing, the DMV notified Wheeler it would suspend her driver's license for four months. Wheeler's petition for writ of mandate to set aside her license suspension was granted, and the DMV appeals.

### DISCUSSION

■ The DMV contends that under section 23158.2 a forensic report does not have to be in the form of a sworn statement. Subdivision (a) of that section provides, in pertinent part, that: "If a peace officer arrests any person for a violation of Section 23152 or Section 23153, the peace officer shall immediately forward to the [DMV] *a sworn report of all information relevant to the enforcement action, including* information which adequately identifies the arrested person, a statement of the officer's grounds for belief that the person violated Section 23152 or Section 23153, [and] *a report of the results of any chemical tests which were conducted on the person . . . ."* (Italics added.)

We recognize that the terms of the statute do not expressly specify whether the "report of the results of any chemical tests" must be sworn. On its face, section 23158.2 arguably requires a police officer only to swear to relevant events of which the officer has personal knowledge. (*Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 139-140 [7 Cal.Rptr.2d 818].) But the only chemical test results of which a police officer normally would have personal knowledge would be where a "breathalyzer" is used. In such a situation, section 23158.2 would clearly require the officer to swear to firsthand observations. (*McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525 [7 Cal.Rptr.2d 18].)

We cannot believe the Legislature contemplated a *lesser* standard (i.e., an unsworn report) with a blood or urine test. The purpose of the sworn

statement is to provide the DMV with competent evidence sufficient to meet its burden of proving the facts necessary to support a license suspension. (*Santos* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 549-550 [7 Cal.Rptr.2d 10]; *Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568, 580-581 [2 Cal.Rptr.2d 249].) An unsworn statement merely listing the blood test results, whether attached to the officer's statement or introduced separately, is nothing more than inadmissible hearsay which is insufficient evidence (in and of itself) to support a license suspension. (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 537-541 [189 Cal.Rptr. 512, 658 P.2d 1313]; *Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 817 [3 Cal.Rptr.2d 478].) We hold, therefore, that the results of *any* chemical test must be sworn under section 23158.2. Since neither analyst swore to the blood test results here, the unsworn report did not meet the requirements of the statute and the evidence is insufficient to support the findings of the hearing officer.[3]

■   The DMV argues that where the chemical test is performed by a forensic laboratory, as was done here, a certification is unnecessary because such laboratories must comply with procedures set out in the California Code of Regulations. (See *Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 816, citing Health & Saf. Code, § 436.50; Cal. Code Regs., tit. 17, §§ 1215-1220.4.) As *Imachi* explains, "These regulations include requirements for licensing of forensic laboratories and analysts, collection and handling of samples and methods of analysis." (2 Cal.App.4th at p. 816.) The DMV's argument misses the point. It completely ignores the criticism leveled by Clardy that at least one of the blood test reports was probably done by an unapproved method. (See *Coombs* v. *Pierce, supra,* 1 Cal.App.4th at p. 580.) Moreover, the issue is not, as the DMV asserts, whether an unsworn blood test report would be admissible under the public records exception to the hearsay rule.[4] The issue is whether section 23158.2 requires chemical test reports to be sworn. The statute sets forth the method

_____

[3]At oral argument, it was suggested that the initials next to the test results were sufficient "signatures" for purposes of the statement of certification. However, there is nothing in the record indicating that these initials, which were next to the test numbers and not the statement of certification, were *intended* to act as a *certification* of the results. (*Cf. Poag* v. *Winston* (1987) 195 Cal.App.3d 1161, 1179 [241 Cal.Rptr. 330]; *Rader Co.* v. *Stone* (1986) 178 Cal.App.3d 10, 23 [223 Cal.Rptr. 806]; *People* v. *Abelson* (1980) 104 Cal.App.3d Supp. 16, 19 [164 Cal.Rptr. 369].) Consequently, it would make no legal difference if the statement of certification were located elsewhere on the local form.

[4]Even if this were the issue, we express serious doubt as to whether the report would fit into the public employee records exception to the hearsay rule. (Evid. Code, § 1280.) Under that section, the record must, among other things, have been prepared "at or near the time of the act, condition, or event" and the "sources of information and method and time of preparation" must indicate the record's trustworthiness. Those criteria are lacking with respect to the report here, which is neither signed nor dated. (Cf. *Daniels* v. *Department of Motor Vehicles, supra,*

of proof for this type of violation, not the Evidence Code. Under established rules of statutory construction, a more specific statute (in this case, § 23158.2) controls over a general statute (such as Evid. Code, § 1280). Since the test results must be sworn under section 23158.2, it is irrelevant whether the report would be admissible under an exception to the hearsay rule.[5] Similarly, the statutory presumption that "official duty has been regularly performed" (Evid. Code, § 664) does not apply here because the report does not comply with the requirement that it be certified. (*Davenport* v. *Department of Motor Vehicles, supra,* 6 Cal.App.4th at p. 144 [presumption under § 664 is compliance with statutory standards, and if licensee shows standards were not observed burden shifts to DMV to prove test reliable]; see also *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th 537, 550; *Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at pp. 815-816.)

■ The DMV also argues the report was not the only evidence in this case, citing the officer's sworn statement that Wheeler suffered from bloodshot/watery eyes, the odor of alcohol, slurred speech, and an unsteady gait. Such evidence would be relevant if Wheeler's license had been suspended under section 13353.2 (driving under the influence of alcohol). However, Wheeler's license was suspended for allegedly driving with a blood-alcohol concentration of .08 percent or more (§ 13353.2). The only "evidence" of such a violation was the laboratory report. Since that report was not sworn, it failed to comply with section 23158.2, and should not have been considered by the hearing officer. In short, the evidence did not establish that Wheeler drove with a blood-alcohol concentration of at least 0.08 percent.[6]

■ Finally, we note that the statutory requirement that *all* chemical test results be sworn serves sound public policy. Accurate and reliable testing

---

33 Cal.3d at p. 541; *Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at pp. 815-816.)

[5]After oral argument, the DMV requested us to "take judicial notice of and consider the principles" set forth in *Jackson* v. *Department of Motor Vehicles* (1994) 22 Cal.App.4th 730 [27 Cal.Rptr.2d 712]. Although that opinion is not yet final and cannot be relied on, nothing in that case compels a finding that the unsworn *chemical* test report here is admissible. At issue in *Jackson* was the admissibility of an unsworn *arrest* report used to support the finding that the licensee was driving while intoxicated. Because the licensee did not object to the arrest report, and the report represented the firsthand observations of the officer, was made by the officer in the scope of his duty as a public employee, and was made near the time of the event, the unsworn report was admissible as a hearsay exception under Evidence Code section 1280. Here, on the other hand, Wheeler objected to the report on various foundational grounds and provided expert testimony that the chemical test results were probably improperly conducted. In any event, and as we point out in the text, there is a specific code section which requires that the chemical test report be sworn. A general hearsay exception cannot override the specific requirements of the Vehicle Code.

[6]The DMV also asserts that *Jackson* (see fn. 5, *ante*, this page) supports its position that the officer's observations were sufficient, in and of themselves, to support the finding that Wheeler was driving with .08 percent or more, by weight, of alcohol in her blood. However,

procedures are essential in assuring the public that today's significant problem of drunk driving is curbed while at the same time ensuring that all licensees are treated fairly. Public confidence in the administrative suspension system cannot be maintained when inaccurate or unreliable testing procedures might just as easily ensnare the sober driver as release the inebriated one. This is precisely why title 17 of the California Code of Regulations requires a laboratory's testing procedures to be approved. Allowing analysts to sidestep the certification process and undermine title 17 through the subterfuge practiced by the Orange County crime laboratory would work a disservice to the clear public policy of this state as evidenced by its strict laws against driving while under the influence of alcohol or drugs.

The judgment is affirmed. Wheeler to recover her costs on appeal.

Wallin, J., and Moore, J., concurred.

---

nothing in *Jackson* supports that conclusion. In that case, the officer's personal observations were merely supplemental to the chemical test results. Moreover, we agree with *Imachi*'s analysis on this point: "Where, as here, an objective test scientifically establishing the proscribed blood-alcohol level is improperly considered, an appellate court cannot assume the trial court did not rely primarily upon it. Given the 'emphatic' mandate of Government Code section 11513 against sole reliance on hearsay evidence . . . and the fact that the test result was clearly the critical piece of evidence establishing that appellant's blood-alcohol concentration exceeded the legal limit, no such contention would be persuasive." (*Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 817, fn. 7, citation omitted.)