[No. A064386. First Dist., Div. Two. Apr. 18, 1995.]

GARY LYNN POLAND, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Anderline, Gudeen, Finkelstein, Emerick & McSweeney and John J. Guheen for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, Jose R. Guerrero and T. Michelle Laird, Deputy Attorneys General, for Defendant and Respondent.

OPINION

KLINE, P. J.—The Department of Motor Vehicles (Department) suspended the driver's license of appellant Gary Lynn Poland based upon a finding that he drove an automobile while possessing a blood-alcohol content (BAC) higher than 0.08 percent. The superior court denied appellant's petition for a writ of mandate to set aside the suspension. Appellant challenges that order on numerous grounds. We find no merit in any of these objections, and affirm the judgment denying the petition.

## BACKGROUND

The suspension rested upon three exhibits which the hearing officer admitted into evidence over objections discussed more fully below. Exhibit 1 was entitled "Officer's Statement [¶] Sections 13353.2 and 13353 Vehicle Code." It consisted of a Department form ostensibly containing the hand-written notations and signature of California Highway Patrol Officer John Hagen, badge No. 12666. According to these notations, on June 15, 1993, at 12:10 a.m., the officer observed a vehicle driven by appellant weaving in its lane on northbound Interstate 280 in San Mateo County. Appellant's car "drifted 2' to 3' onto the r[ight] shoulder four times." The car was also pulling a string of tin cans, and "some cans were coming off the string." The driver displayed symptoms of intoxication, i.e., "Bloodshot/watery eyes," "Odor of alcoholic beverage," "Slurred speech," "Failed FST's," and "PAS indicated .10% B.A."

The form went on to report that appellant was arrested at 12:20 a.m. His breath was tested at 1:02 and again at 1:03 a.m.; both tests yielded a BAC of .11 percent. These results were reported on a portion of the form in which the officer appeared to certify under penalty of perjury "that the above test sample results were obtained in the regular course of my duties . . . [,] that I am qualified to operate this equipment and that the test was administered pursuant to the requirements of Title 17 of the California Code of Regulations." At the bottom of the document was a further certification, "under penalty of perjury, that the information on both sides of this form is true and correct." The reverse side of the form, which was apparently reserved for cases of refusal to submit to blood-alcohol testing, is not included in the record.

Exhibit 2 was an "Administrative Per Se Order of Suspension/Revocation [and] Temporary License Endorsement." It was ostensibly filled out by Officer Hagen, and notified appellant that his license would be suspended or revoked because he had been arrested for driving under the influence of alcohol or drugs and he "[c]ompleted a breath test with a blood alcohol concentration of .08 percent or greater."

Exhibit 4 was an apparent computer printout ostensibly reflecting breath analyzer tests administered to appellant. It bore the handwritten notations "JSH" and "12666."

At the suspension hearing counsel for appellant objected orally and in writing to one or more of these documents on grounds of hearsay, relevance, authentication, and opinion. He stated, "There is no identification, other than through the actual writing[s] here, themselves, with regard to the person who did prepare it and their status." On the stated basis of his own experience in other cases, he questioned whether exhibit 1 was in fact the "forms approved or supplied by the Department of Motor Vehicles." He also cited the

requirement of Vehicle Code section 23158.2 that the officer transmit a copy of such a report to the Department within five business days after the arrest. He stated that the stamped date of receipt of the document was illegible, but might well be June 26, which would be four days after the deadline under section 23158.2. Counsel also asserted that "the breath test machine operator certification" in exhibit 1 was "in effect, an affidavit," and as such could not be relied upon without advance notice to appellant under the Administrative Procedures Act, Government Code sections 11513 and 11514.

The hearing officer overruled all of appellant's objections to all three documents. Counsel then called William Giguiere to testify concerning BAC. The hearing officer stipulated to Mr. Giguiere's qualifications as an expert witness. Declarations from Mr. Giguiere were marked in evidence. He then testified that he had conducted two procedures to enable him to form an expert opinion whether appellant's BAC was actually as indicated in the "purported test results." The first procedure was a "drinking re-creation" in which appellant "ate and drank what he said he ate and drank on the date of his arrest." Appellant told Mr. Giguiere he had drunk nine beers between 6 p.m. and midnight, also consuming a meal of shish kebab, rice, and bread. Upon recreating these conditions, Mr. Giguiere concluded that appellant's BAC would have been .061 percent when he was first observed by the officer, and .067 when the breath test was administered.

The second procedure was a "metabolic factor testing" in which appellant's actual BAC as determined by blood analysis was compared to the results of simultaneous breath analysis. On two of three tests, the breath analysis results overstated the actual BAC by approximately 30 percent. A similar overstatement in the tests administered on the night of his arrest would mean that his actual BAC at that time was .07 percent. Mr. Giguiere concluded, based on both tests, that appellant's BAC was below .08 percent when he was driving.

Mr. Giguiere also performed "impairment testing" by which he attempted to determine appellant's "baseline" and the extent to which various indicia were in fact symptomatic of alcohol consumption. He testified that none of the "objective symptoms" identified in exhibit 1 "can be used to say that a person had a .08 or a greater blood alcohol level." Nor could any of those factors "cause an officer to know the person was or was not under the influence of alcohol."[1]

Mr. Giguiere testified that in his expert opinion, appellant's BAC was below 0.8 percent at 12:10 a.m., when he last drove on the night in question.

---

[1] Mr. Giguiere's declaration was somewhat more precise on this point: "Because a vehicle is weaving and drifting does not allow a conclusion *with certainty* that the driver's BAC is 0.08%, or greater. There is no information in Officer Hagen's report relating to Mr. Poland's

In response to questions from the hearing officer, Mr. Giguiere testified that an individual's body chemistry does not remain the same from day to day. He acknowledged that alcohol absorption rates might vary according to the time of day, and that the "drinking re-creation" with appellant was performed in the morning rather than the evening. However, he cited a German study suggesting that absorption rates were typically higher in the morning than in the evening.

Briefly questioned by his attorney, appellant testified that some cans had been tied to his car by "some guys [who] were playing a joke," and that he was unaware of the cans until he was pulled over.

On July 23, 1993, the hearing officer issued her "Administrative Per Se Notice of Findings and Decision," finding grounds for and declaring a license suspension effective July 30. Appellant filed a petition for mandamus in the superior court. Although the petition is not included in the record, it was apparently filed on or before August 23, 1993. On that date, the court issued an alternative writ directing respondent to set aside the suspension order or show cause why it had not done so. The alternative writ further provided that the suspension was stayed pending further order of court.

At the October 4 hearing on the petition, counsel for appellant argued that the documents relied upon by the hearing officer were inadmissible because they were not authenticated by any testimony or evidence beyond their own contents. In addition, he contended, even if the documents were admissible they failed to carry the Department's burden of proof in view of the more credible evidence introduced by appellant to the effect that his BAC was well under the legal minimum. The court expressed the view that "the real issue . . . is the hearing officer's refusal to accept a challenge to the presumed partition ratio of 21 hundred to one based upon the circumstantial evidence of the—offered by Mr. Guheen's expert witness." The court also observed, "[T]hese hearing officers are fair minded people . . . but they're there right out of the DMV Driver Improvement Analysis staff and their orientation is all in one direction." He added that the transcript of the hearing did not give him the impression "that this particular hearing officer was

driving pattern that could lead one to conclude that he was driving with an alcohol concentration of 0.08%, or above. From such a driving pattern one cannot conclude *with certainty* that Mr. Poland's blood alcohol concentration was in excess of 0.08%." (Italics added.)

Later in the declaration Mr. Giguiere wrote that the four "objective symptoms" reported by the officer "have no basis in science and would have little, or no relevance, to the determination of a violation of the 0.08% *per se limit*. In fact, individuals who have consumed alcohol, and who have attained a BAC of 0.08%, would not normally exhibit any of these 'Objective Symptoms of Intoxication.' Furthermore, there are a multitude of factors that can produce identical symptomatology that are not remotely related to alcohol ingestion."

paying a lot of attention to anything Mr. Guheen offered." Later he added, "I kind of have an impression that somebody was in a hurry and—let's put it this way. The—there is a transmitter and there's a receiver. So I'm not sure the receiver was turned on all the time and I'm not sure what difference that's going to make."

By minute order dated October 8, 1993, the court denied relief, discharged the alternative writ, and vacated the stay. The clerk mailed copies of this order to counsel on October 13. On December 2, 1993, the court entered a judgment denying a peremptory writ of mandate, discharging the alternative writ, dissolving the stay order, and awarding costs to respondent. Respondent mailed notice of entry of judgment on December 7, 1993. Notice of appeal was filed on December 21, 1993. We denied appellant's petition for writ of supersedeas and request for stay.

## Due Process

Appellant's arguments before this court largely reiterate those presented to the hearing officer and the superior court, with the added assertion that the procedures employed at the Department hearing violated appellant's statutory and constitutional rights to due process. This argument appears to unfold as follows: (1) The hearing officer cannot fairly or properly adjudicate the case because he or she is an employee of the Department and a proponent of evidence; (2) in most cases, hearing officers are "not sufficiently trained and/or well versed in the applicable law so as to fully comprehend and properly rule on the objection(s) made;" (3) although similar arguments have been rejected by published authorities, those decisions are distinguished because they involved fundamentally fair procedures, while this case does not; (4) the hearing officer here failed to weigh and consider the issues, paid no attention to appellant's arguments and evidence, and overruled his objections "out of hand."

Appellant concedes that any blanket challenge to the statutory procedures for license revocation runs afoul of published authority. There is, in fact, a "wealth of authority" rejecting arguments of the type appellant makes. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 74 [177 Cal.Rptr. 566, 634 P.2d 917]; see *Anderson* v. *Cozens* (1976) 60 Cal.App.3d 130, 140 [131 Cal.Rptr. 256] [citing numerous cases]; *Serenko* v. *Bright* (1968) 263 Cal.App.2d 682, 690-691 [70 Cal.Rptr. 1], hg. den.; *Finley* v. *Orr* (1968) 262 Cal.App.2d 656, 666 [69 Cal.Rptr. 137], hg. den.) He seeks to "distinguish" those authorities on the ground that the procedures actually employed here lacked fundamental fairness. This argument, however, ultimately rests on characterizations of the hearing officer's mental processes

which lack record support, and are irreconcilable with the presumption of correctness which cloaks not only the hearing officer's ruling, but the trial court's judgment sustaining that ruling. Appellant seeks to avoid the effect of these presumptions by the tautological assertion that we should not indulge the presumption of correctness because the hearing was fundamentally unfair. We cannot accept the premise of this argument without some *showing* of unfairness. It needs no citation of authority for us to reject an argument that chases itself in circles.

No violation of due process appears.

## RELEVANCY AND AUTHENTICITY

Appellant next appears to contend that the documents on which the hearing officer relied lacked relevancy. The argument actually rests on the notion that a document is relevant only if shown to be authentic. It thus merges with the contention that the documents were not competently authenticated. This contention in turn may be distilled into the following point: the documents were inadmissible in the absence of *extrinsic* evidence that they were authentic, i.e., that they were in fact Department forms prepared and executed by Officer Hagen. Appellant contends that this required the Department, as proponent of the evidence, to "produce a witness who testified that he/she personally observed . . . the writing being made or executed." (Italics removed.)

This argument ignores Evidence Code section 1453, which provides, in part, "A signature is presumed to be genuine and authorized if it purports to be the signature, affixed in his official capacity, of [¶] . . . [¶] (b) A public employee of any public entity in the United States." Given this presumption, the apparent signature of Officer Hagen, apparently affixed in his official capacity as an employee of the State of California, furnishes "evidence sufficient to sustain a finding" that the writings were what the Department claimed them to be. (Evid. Code, § 1400, subd. (a).) Since this was a presumption affecting the production of evidence (Evid. Code, § 1450), the trier of fact was "required" to accept the documents as authentic in the absence of evidence which would support a contrary finding. Appellant points to no such evidence and we have discovered none in the record. Accordingly, the authenticity objection was properly overruled. (See *Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 310 [13 Cal.Rptr.2d 830], review den.)

## HEARSAY

Both parties appear to agree that the documents in question were hearsay, and that they furnished the sole proof that appellant drove with a

BAC over the statutory limit. The parties further agree that the documents could be relied upon for that purpose if, but only if, they would be admissible over a hearsay objection in a civil action. (*Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 813 [3 Cal.Rptr.2d 478]; *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 538 [189 Cal.Rptr. 512, 658 P.2d 1313]; Gov. Code, § 11513, subd. (c).) The question thus presented is whether the documents satisfy this test.

Respondent asserts that the documents were admissible under Evidence Code section 1280 as writings made by a public employee. This view is supported by substantial authority. (E.g., *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 139 [7 Cal.Rptr.2d 818], review den; *Burge* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 388-389 [7 Cal.Rptr.2d 5], review den.) Indeed, we ourselves adopted this view in *Imachi* v. *Department of Motor Vehicles*, *supra*, 2 Cal.App.4th at pages. 815-816, while holding that a traffic officer's report was not admissible with respect to *compound* hearsay it contained.[2]

Appellant suggests that the evidence before the hearing officer did not satisfactorily show that the documents were in fact made by a public employee. (See Evid. Code, § 1280, subd. (a).) "Obviously," he asserts, "this proof must be independent of the document itself otherwise the document would be used to 'bootstrap' its own foundation which would negate and render meaningless the foundational pre-requisites for admissibility." (Italics omitted.) ██ ██ However, Evidence Code section 1453 reflects an implicit policy decision that if a document "purports" to be signed by a public employee acting in an official capacity, the likelihood of its authenticity is sufficiently high that in the absence of evidence to the contrary it should be found authentic. This does not "render meaningless" the rules governing documentary evidence; it particularizes the treatment of a certain category of documents in order to accomodate the sometimes competing concerns of accurate fact-finding and adjudicatory efficiency. In any event, it is the law, and under section 1453 the officer's report is presumed to be what it appears to be. As such it was inferentially, if not presumptively, made within the scope of the officer's duty (Evid. Code, § 1280, subd. (a)), and "at or near the time of the act, condition, or event" it appeared to record (*id.*, subd. (b)).

The final requirement for admission of a writing prepared by a public employee is that "the sources of information and method and time of

---

[2]In *Imachi* we held the recapitulation of test results in an officer's report inadmissible because the test was "not performed by the officer and so not within the officer's personal knowledge." (2 Cal.App.4th at p. 816.) Here, in contrast, the report affirmatively indicates that the officer himself conducted the test.

preparation were such as to indicate its trustworthiness." (Evid. Code, § 1280, subd. (c).) This requirement is satisfied here by the presumption that Officer Hagen "regularly performed" his duty to properly perform the breath tests and accurately observe and record the results. (See Evid. Code, § 664; *Davenport* v. *Department of Motor Vehicles, supra,* 6 Cal.App.4th at pp. 141-143; *Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 815.)

In opposition to these authorities appellant cites only *People* v. *Parker* (1992) 8 Cal.App.4th 110, 117 [10 Cal.Rptr.2d 38] (review den.), as requiring evidence of trustworthiness "independent of the reports themselves." However the court there was concerned with the reliability of controlled substance test results to which the defendants objected, in part, because no one testified as to what tests were conducted and "the reports themselves did not indicate what types of analyses were performed or the procedures used" by the absent criminalist. (*Id.* at pp. 114-115.) Here there is no such doubt about the *nature* of the tests administered. The only question was whether they were administered in a trustworthy *manner.* Under the authorities above, the hearing officer was entitled, if not required, to presume that they were.

## FAILURE TO FORWARD REPORT

Appellant contends that the documents in question were inadmissible because the record fails to show compliance with the requirement that an arresting officer forward to the Department a sworn report of relevant information within five business days after the arrest. (Veh. Code, § 23158.2.) However, in the absence of some indication to the contrary, it must be presumed that Officer Hagen regularly performed the duty imposed on him by section 23158.2. (Evid. Code, § 664.) The illegibility of the Department's "Received" stamp on the copy of the report in the record does not tend to rebut this presumption.

For the same reasons, we reject the suggestion that the report was inadmissible in the absence of affirmative proof that when transmitted to the Department it was accompanied by a copy of the intoxilizer printout. If a copy of the printout was required by law to be attached—as this argument posits—then it must be presumed under section 664 that a copy *was* attached.

## FOUNDATION

Appellant asserts in passing that the report fails to establish that "the results of the breath test were based upon the officer's personal knowledge

as is required by the *Davenport* case." This assertion verges on the frivolous. Exhibit 1 contains Officer Hagen's first-person certification under penalty of perjury that "the above breath test sample results were obtained in the regular course of my duties." The most reasonable interpretation of this averment is that the officer personally conducted the breath tests.

### FAILURE TO GIVE ADVANCE NOTICE

■ Noting that the officer's report contains a penalty-of-perjury clause, appellant characterizes it as an "affidavit" and contends that the Department could not rely on it without giving notice under the Administrative Procedure Act (APA) of appellant's right to cross-examination. He relies specifically on Government Code section 11514, which sets out a procedure for using affidavits in lieu of direct testimony in proceedings governed by the APA. Under that section, any party proposing to rely on affidavits in that manner must provide copies to the opposing party along with a notice of the right to cross-examine the affiant. If the opposing party does not request cross-examination, the right to cross-examine is waived and the affidavit may be treated as the equivalent of oral testimony. If no such opportunity to cross-examination is provided, however, "the affidavit may be introduced in evidence, but shall be given only the same effect as other hearsay evidence." (Gov. Code, § 11514, subd. (a).)

Government Code section 11514 has no apparent application to this case. In effect it creates a special further exception to the hearsay rule for administrative proceedings. It was obviously not intended to restrict the admission in administrative proceedings of evidence falling within other exceptions to the hearsay rule. Exhibit 1 was independently admissible as a public record under Evidence Code section 1280. The penalty-of-perjury clause was therefore superfluous, and the cited APA provision was irrelevant.

### EXPERT TESTIMONY

■ Finally appellant recapitulates the expert testimony he elicited at the revocation hearing. He asserts that the expert provided "independent proof" that appellant's BAC was below the legal limit. Accordingly, he contends, "the record contains evidence both ways on the issue . . . and the Respondent cannot be found to have preponderated on this issue."

This argument fundamentally misconceives the role of an appellate court. It is not for us to determine whether the evidence "preponderated" on one side or the other, but only whether substantial evidence supported the ruling

of the superior court. "Our task on appeal is to determine 'whether the evidence reveals substantial support, contradicted or uncontradicted, for the trial court's conclusion.'" (*Bell* v. *Department of Motor Vehicles, supra,* 11 Cal.App.4th at p. 309, quoting *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72-73 [64 Cal.Rptr. 785, 435 P.2d 553].) Given that the record discloses substantial evidence in support of the trial court's ruling sustaining the hearing officer's decision, we cannot disturb that ruling.

The judgment is affirmed.

Smith, J., and Haerle, J., concurred.