Filed 2/26/14  Smith v. DMV CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RUSSELL CARTER SMITH, | |
| Plaintiff and Appellant, | E055571 |
| v. | (Super.Ct.No. CIVDS1108227) |
| DEPARTMENT OF MOTOR VEHICLES, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge. Affirmed.

Law Offices of Michael A. Scafiddi, Inc., Michael A. Scafiddi and Benjamin R. Cates for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Senior Assistant Attorney General, Michael E. Whitaker, Supervising Deputy Attorney General, and Michael J. Hui, Deputy Attorney General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Smith appeals from a judgment denying his petition for peremptory writ of administrative mandamus to set aside the suspension of Smith's driving privileges, for driving under the influence of alcohol. Smith contends the trial court erred in concluding the Bio-Tox Laboratories (Bio-Tox) blood report (lab report) was properly admitted into evidence during the Administrative Per Se (APS) hearing under the business records exception (Evid. Code, § 1271). Smith argues the lab report was inadmissible because there was no live testimony by a custodian or qualified witness regarding the report's identity and mode of preparation, as required under Evidence Code section 1271, subdivision (c). There was therefore also no opportunity to cross-examine the individual who certified the report.

We conclude the trial court did not abuse its discretion in denying Smith's petition for writ of mandamus based on the finding there was sufficient evidence supporting the California Department of Motor Vehicles' (DMV) suspension of Smith's driver's license. The judgment is affirmed.

# II

## FACTS AND PROCEDURAL BACKGROUND

The following facts are from Police Officer Budd's police report. On February 4, 2011, around 11:25 p.m., Smith drove into a DUI (driving under the influence) checkpoint. Budd observed that Smith had bloodshot, watery eyes and a strong odor of alcohol emanating from Smith and his vehicle. During field sobriety tests, Budd further

2

observed that Smith would not make eye contact and would only speak when Budd asked Smith a question several times. Budd believed this was because Smith did not want Budd to smell alcohol on his breath. Smith also had difficulty understanding Budd's instructions for each of the field sobriety tests and poorly performed the tests. In addition, Smith refused to submit to the Preliminary Alcohol Screening.

Based on Smith's poor performance of the field sobriety tests, Budd concluded Smith was unable to operate his vehicle safely and arrested him for driving under the influence. After Smith submitted to a chemical blood test, Budd transported him to the police station. Law Enforcement Medical Services, Inc. conducted the blood draw at 12:10 a.m., on February 5, 2011. The blood specimen was placed into the evidence at the lock up. Budd then released Smith with a citation for violating Vehicle Code section 23152, subdivisions (a) (driving under the influence of alcohol) and (b) (having 0.08 percent or more alcohol in one's blood while driving).

Bio-Tox tested Smith's blood specimen and reported that his blood alcohol concentration was 0.09%. The DMV notified Smith that his driver's license was suspended under Vehicle Code section 13353.2, effective March 6, 2011.

On June 1, 2011, an APS hearing was conducted on the suspension of Smith's driving privileges. During the hearing, the DMV submitted the following documents: (1) Age 21 and Older Officer's Statement, (2) the lab report, (3) Redlands Police Department Intoxication Report, (4) Notice of APS Hearing, (5) Smith's temporary license, and (6) Smith's driving record. The APS hearing officer overruled Smith's objections to the Age 21 and Older Officer's Statement and lab report. During the APS

3

hearing, Budd testified regarding the facts leading to Smith's arrest and the blood draw. He also testified regarding statements made in the arrest report. Smith did not testify or subpoena Erin Crabtrey, who performed the blood analysis and signed the lab report.

On June 16, 2011, the APS hearing officer issued a notice of findings and decisions, in which Smith was found to have been driving a vehicle with a blood alcohol concentration of 0.09%. As a result, the DMV upheld suspension of Smith's driving privileges. Smith filed a petition for writ of mandate, seeking to reverse suspension of his driving privileges. The trial court denied Smith's petition and held that the DMV properly suspended Smith's driver's license. The trial court concluded that the APS hearing officer properly admitted into evidence the lab report under the business records exception (Evid. Code, § 1271).

III

ADMISSIBILITY OF LAB REPORT

Smith contends the trial court abused its discretion in determining that the lab report was properly admitted during Smith's APS hearing under the business records exception (Evid. Code, § 1271, subd. (c)).

"Generally, when ruling on a petition for a writ of mandate challenging an order suspending a driver's license, a trial court exercises its independent judgment to determine ""'whether the weight of the evidence supported the administrative decision.'"" [Citation.] On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence. [Citation.]

4

"However, when the appellant challenges a trial court's evidentiary ruling, a different standard of review applies. We review the trial court's rulings regarding the admissibility of evidence under the deferential abuse of discretion standard. [Citation.]" (*Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1217 (*Miyamoto*).) Specifically, we review the trial court's ruling that the lab report did not meet the requirements of Evidence Code section 1271 for an abuse of discretion. A trial court has broad discretion in determining whether a party has established the foundational requirements of Evidence Code section 1271. (See *Miyamoto,* at p. 1217.) Likewise, here, we review the trial court's ruling the lab report was admissible under the business records hearsay exception (§ 1271) for an abuse of discretion. This court may overturn the trial court's exercise of discretion only upon a clear showing of abuse. (*Miyamoto,* at p. 1218.)

Applying these concepts, we conclude the trial court did not abuse its discretion in concluding the lab report was admissible under Evidence Code section 1271. Even if the hearsay exception did not apply, Smith forfeited any objection to the report by not objecting to it as inadmissible under Evidence Code section 1271. Smith's attorney argued the report was inadmissible under Evidence Code section 1280 but not under Evidence Code section 1271.

The business records hearsay exception, Evidence Code section 1271, provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was

5

made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." Only subdivision (c) of Evidence Code section 1271 requires testimony. Here, such testimony was provided by affidavit.

Smith argues the lab report which was signed under penalty of perjury by Crabtrey and confirmed the identity and mode of preparation of the lab report, was not an affidavit because it was not a written statement taken under oath before an officer of the court or someone with the authority to administer such an oath. Although Smith objected to the lab report at the APS hearing, she did not object on the grounds it was not signed and dated under oath before a court officer or someone with the authority to administer such an oath. Therefore these objections were forfeited. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1276; *People v. Hovarter* (2008) 44 Cal.4th 983, 1008.)

Smith also argues Crabtrey's signature was undated. Smith did not raise this objection at the APS hearing, but did raise it in the trial court. The trial court concluded Crabtrey's statement was admissible under the Evidence Code section 1271 hearsay exception because Crabtrey stated she was qualified to perform the blood analysis and the recording of the blood analysis was done at the time of the analysis. In addition, the trial court noted that Smith did not raise the objection as to Crabtrey's qualifications at the APS hearing under Evidence Code section 1271. We conclude the trial court did not abuse its discretion in overruling these untimely evidentiary objections.

Smith further argues that under Evidence Code section 1271, live testimony was

required in order for the DMV to lay a foundation for admission of the lab report under the business records exception. We disagree. Testimony in the form of certification by affidavit, rather than live testimony, was sufficient to satisfy the business records exception. Evidence Code section 1271, subdivision (c), provides that "Evidence of a writing made as a record of an act . . . is not made inadmissible by the hearsay rule when offered to prove the act . . . if . . . [¶] [t]he custodian or other qualified witness *testifies* to its identity and the mode of its preparation." (Italics added.) Under Code of Civil Procedure section 2002, the term "testimony," includes testimony of witnesses taken in three modes: "1. By affidavit; [¶] 2. By deposition; [¶] 3. By oral examination." (Code Civ. Proc., § 2002.)

Evidence Code section 1271, subdivision (c), of the business records hearsay exception thus requires a witness to testify to the identity and mode of preparation of a record introduced into evidence. Such testimony may be provided by affidavit. (See *Cooley v. Superior Court* (2006) 140 Cal.App.4th 1039, 1045 [live testimony by custodian of records or other qualified witness not required to establish authenticity of subpoenaed records under Evidence Code section 1271].) Crabtrey's certification by affidavit therefore satisfied the business records exception. Live testimony was not required.

Smith nevertheless argues that, under Evidence Code sections 1560 through 1566, the lab report was not admissible under the business records hearsay exception (Evid. Code, § 1271) in the absence of live testimony. But as the trial court concluded, Evidence Code sections 1560 through 1566 are inapplicable because they pertain to

7

business records produced pursuant to a subpoena duces tecum in civil and criminal matters. The parties in the instant case did not serve a subpoena duces tecum for production of the lab report. The DMV voluntarily produced the report at the APS hearing.

Crabtrey's affidavit satisfied the Evidence Code section 1271 requirements by Crabtrey attesting to the following: "I certify, under penalty of perjury under the laws of the State of California, that the below analysis was performed during the regular course of my duties and is a true and correct representation of the results of the analysis. I further certify that I am qualified to perform these analysis pursuant to Title 17 of the California Code of Regulations, that the equipment used was in proper working order at the time the analysis was performed, that the recording of the analysis was done at the time of the analysis and that the transfer of the data for reporting purposes was performed electronically in accord with the laboratory's policies and procedures." This statement satisfied the requirements of Evidence Code section 1271, particularly subdivision (c), by certifying (1) the identity of the lab report, as an analysis of Smith's blood alcohol concentration, and (2) the mode of preparation of the lab report.

Furthermore, the technical rules of evidence are not strictly followed at APS hearings because of the intent of APS laws is "to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive. [Citation.] One aspect of this accelerated procedure is a

8

slight relaxation of the rules of evidence applicable to an administrative per se review hearing." (*Lake v. Reed* (1997) 16 Cal.4th 448, 462.)

Under Government Code section 11513, subdivision (c), of the Administrative Procedures Act governing APS hearings (Gov. Code, § 11370, 11501; *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 813, *Lake v. Reed, supra*, 16 Cal.4th at p. 458), "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." However, under Government Code, section 11513, subdivision (d), hearsay evidence may not be the sole basis for a finding unless it is admissible in a civil action: "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence *but over timely objection shall not be sufficient in itself* to support a finding unless it would be admissible over objection in civil actions. An objection is timely if made before submission of the case or on reconsideration." (Gov. Code, § 11513, subd. (d); italics added.)

Under Government Code section 11513, the lab report could not be used as the sole basis for determining Smith's blood alcohol content, unless the lab report was admissible under an exception to the hearsay rule or Smith failed to object timely to the lab report. (*Miyamoto, supra,* 176 Cal.App.4th at p. 1217.) Smith objected to the lab report on authenticity and trustworthiness grounds during the APS hearing but the APS

9

hearing officer appropriately overruled his objections. Smith initially requested a continuance of the APS hearing for the purpose of subpoenaing Crabtrey to explain why the report was faxed back and forth in April 2011, but the APS hearing officer denied a continuance, reasonably concluding the request was not timely made. The hearing officer noted that the APS hearing had been continued several times before and Smith had had ample opportunity to subpoena Crabtrey to appear at the hearing.

After the continuance was denied, Smith argued the official duty hearsay exception (Evid. Code, § 1280) did not apply because the lab report was not trustworthy, since the FAX dates on the top of the report showed it was faxed back and forth between the DMV and Bio-Tox in April 2011, two months after the analysis was performed in February 2011. Smith speculates that this indicates that Crabtrey did not initially sign the report in February. Therefore the report was faxed back to her in April for her signature. The parties agree the official duty hearsay exception (Evid. Code, § 1280) does not apply because Bio-Tox is not a public agency and the lab report is not a public record. However, the business records hearsay exception, which was not raised during the APS hearing, also requires a finding of trustworthiness of the document. Evidence Code section 1271, subdivision (d), of the business records exception requires: "The sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1771, subd. (d).)

Crabtrey's certification statement, made under penalty of perjury, was sufficient to satisfy the trustworthiness requirement. Crabtrey confirmed that the blood analysis report accurately stated the results of the blood analysis; she performed the blood test analysis;

10

she was qualified to perform the analysis; the testing equipment was in working order when the analysis was performed; the test results were recorded at the time of the analysis; and transfer of the data was performed electronically. Smith has not established that the trial court abused its discretion in concluding Crabtrey's certification statement was sufficiently trustworthy under Evidence Code section 1271, subdivision (d). Smith's attempt to challenge the lab report's trustworthiness based on the the facsimile lines at the top of the document and conjecture that Crabtrey forgot to sign the report, is pure speculation and was not proven at the APS hearing. Smith had the opportunity to clarify this by subpoenaing Crabtrey, but failed to do so.

Smith argues that by not requiring live testimony by Crabtrey to establish the identity of the lab report and mode of preparation, he was deprived of the opportunity to cross-examine the custodian or other qualified witness. But even assuming Smith had a right to cross-examination, he forfeited such right by not subpoenaing Crabtrey or any other witness. (*Monaghan v. Department of Motor Vehicles* (1995) 35 Cal.App.4th 1621, 1626.) Smith had the right to obtain the names of witnesses the DMV intended to call during the APS hearing (Gov. Code, § 11507.6). Had Smith done so, he would have learned that Crabtrey was not going to testify at the APS hearing and Smith could have subpoenaed her for purposes of cross-examination. (*Burkhart v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 110.)

We conclude the trial court did not abuse its discretion in denying Smith's petition for writ of mandamus. Crabtrey's affidavit established the foundational elements of the business records hearsay exception. The lab report was admissible under the business

11

records exception.  The trial court therefore reasonably concluded the APS hearing officer properly relied on the lab report in reimposing the suspension of Smith's driver's license.

## IV

## DISPOSITION

The judgment is affirmed.  The DMV is entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.