[No. G016679. Fourth Dist., Div. Three. Feb. 11, 1998.]

RICHARD J. MANNING, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Silvia M. Diaz, Dana T. Cartozian and David Tiede, Deputy Attorneys General, for Defendant and Appellant.

Virginia L. Landry for Plaintiff and Respondent.

**OPINION**

**SILLS, P. J.**—Richard J. Manning was arrested for driving under the influence of alcohol and submitted to a urine test. The forensic report from the Orange County Sheriff-Coroner Department crime laboratory showed he had a blood-alcohol concentration above the legal limit of 0.08 percent. Following an administrative per se hearing, the Department of Motor Vehicles (DMV) suspended his driving privilege for driving with a blood-alcohol concentration in excess of the legal limit.

Manning petitioned for writ of administrative mandamus. The superior court issued the writ and the DMV appealed. We affirmed the judgment in a nonpublished opinion, relying on *Wheeler* v. *Department of Motor Vehicles*

(1994) 34 Cal.App.4th 228 [45 Cal.Rptr.2d 462]. *Wheeler* held, among other things, that a forensic blood test must be sworn to be admissible in an administrative per se hearing.[1] However, the Supreme Court granted review in this case and, after it issued its opinion in *Lake* v. *Reed* (1997) 16 Cal.4th 448 [65 Cal.Rptr.2d 860, 940 P.2d 311], transferred it to us with directions to reconsider the cause in light of *Lake*.

*Lake* held that ". . . a forensic laboratory report need not be sworn as a condition of admission into evidence at an administrative per se review hearing. So long as the forensic laboratory report complies with other statutory requirements, it becomes an 'official record' of the DMV and, though unsworn, is admissible in the administrative review hearing (*Lake* v. *Reed, supra*, 16 Cal.4th at p. 467.) *Lake* stated that its "conclusion is consistent with the relaxation of evidentiary rules applicable in administrative hearings. A report prepared by a forensic laboratory properly licensed by the State of California (see Cal. Code Regs., tit. 17, § 1215 et seq.), though unsworn, 'is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs' (Gov. Code, § 11513, subd. (c)) (*Ibid.*)

■ At the administrative per se hearing Manning objected to the admission of the forensic report on various evidentiary grounds. Relevant to this appeal, he pointed out that the first forensic test was supposedly performed by Debra Eck, a forensic alcohol supervisor, on October 25, 1993. However, the computer printout states the urine sample was not submitted to the laboratory until the following day, October 26. The DMV did not offer any evidence to rebut Manning's claim, and thus the question is whether a forensic report, which discloses a patent physical impossibility on its face, " 'is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' " (*Lake* v. *Reed, supra*, 16 Cal.4th at p. 467.) We don't think so. Even in the relaxed evidentiary world of administrative per se hearings, a forensic report must reflect some relationship with the physical world we know.[2]

Manning then pointed out that a second test was performed several days later by a forensic alcohol analyst trainee, Qui Dang. A trainee is "a person employed by a forensic alcohol laboratory for the purpose of receiving

---

[1]We initially certified *Wheeler* for publication, but our opinion in that case was superseded when the Supreme Court granted review. The Supreme Court dismissed review a year later and remanded the cause to this court. (Cal. Rules of Court, rule 29.4(c).) In the order dismissing review, the Reporter of Decisions was directed to publish the opinion in the Official Reports. (Cal. Rules of Court, rule 976(d).)

[2]The Attorney General concedes there is a "discrepancy" in the dates. Because the dates are part of the computer printout, the logical inference is the test results are someone else's, not Manning's.

comprehensive practical experience and instruction in the technical procedures of forensic alcohol analysis under the supervision of a forensic alcohol supervisor or forensic alcohol analyst." (Cal. Code Regs., tit. 17, § 1215.1, subd. (h).) While a forensic trainee "may perform forensic alcohol analysis" he or she may do so "only under the supervision of a forensic alcohol supervisor or forensic alcohol analyst." (Cal. Code Regs., tit. 17, § 1216, subd. (a)(1)(A).) Nothing in the forensic report submitted here indicates Dang was properly supervised when she performed the test. Consequently, she was not qualified to perform the test and her test results are also inadmissible.[3]

*Lake* tells us that in driver's license suspension cases, the reviewing courts should draw "all logical and reasonable inferences in the trial court's favor. . . ." (*Lake* v. *Reed, supra,* 16 Cal.4th at p. 467, citation omitted.) The superior court found the forensic report to be inadmissible. Given that the forensic analyst signed a report stating she performed a forensic alcohol test before the urine sample ever made it to the laboratory, and the forensic trainee was not supervised when she performed her test, the court's finding is amply supported by the record.

The judgment is affirmed. Manning shall recover his costs on appeal.

Crosby, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied February 26, 1998.

---

[3] The Attorney General filed a petition for rehearing in which he asserts we misapplied the rebuttable presumption of Evidence Code section 664. That section provides, "It is presumed that official duty has been regularly performed." He insists that under section 664 the DMV is entitled to a rebuttable presumption that the forensic trainee was properly supervised in the absence of evidence to the contrary. But there is evidence, indeed substantial evidence, to the contrary.

First, the computer printout itself shows the urine sample analyzed by the laboratory could not have been Manning's. It would be a sad day indeed if, as the Attorney General seems to urge, the rebuttable presumption of Evidence Code section 664 could overcome a patently flawed test result and ascribe to one licensee the results of another licensee's chemical test.

Second, a trainee is not qualified to perform forensic analysis. While the regulations permit a supervised trainee, as part of his or her education, to perform forensic analysis (Cal. Code Regs., tit. 17, § 1216, subd. (a)(1)(A)), nothing in the regulations qualifies a trainee to vouch for the accuracy of the results. That remains the responsibility of a forensic analyst. Stated another way, a trainee has no official duty to report test results. Because a trainee has no official duty to report forensic test results, his or her test results are not entitled to the presumption that official duty was performed. (See *Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 78-79 [179 Cal.Rptr. 379] [presumption based on belief that public officer who has official duty to make an accurate statement will do so].)