[No. G019924. Fourth Dist., Div. Three. Mar. 31, 1998.]

THOMAS JEREMIAH SHEA, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

Daniel E. Lungren, Attorney General, Martin H. Milas, Assistant Attorney General, Silvia M. Diaz and David M. Tiede, Deputy Attorneys General, for Defendant and Appellant.

Schulman & McMillan and Marshall M. Schulman for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Thomas Jeremiah Shea was arrested for driving under the influence of alcohol and submitted to a blood test. The Department of Motor Vehicles (DMV) suspended his driver's license because the forensic report admitted at the administrative per se hearing indicated he had a blood-alcohol concentration exceeding the legal limit of 0.08 percent. The trial court, however, set aside his suspension, finding the tests were performed by unsupervised, and thus unqualified, forensic analyst trainees.

■ A forensic alcohol report becomes an official record of the DMV, and thus admissible at an administrative per se hearing, if it complies with the requirements governing the admission of evidence. (*Lake* v. *Reed* (1997) 16 Cal.4th 448, 467 [65 Cal.Rptr.2d 860, 940 P.2d 311].) This includes hearsay. Although a forensic report is hearsay, it falls within the public employees record exception to the hearsay rule if the proponent of the report (here, the DMV) establishes the necessary foundation for its admission. (*Ibid.*; see *People* v. *Ramos* (1997) 15 Cal.4th 1133, 1177 [64 Cal.Rptr.2d 892, 938 P.2d 950].) The public employees record exception is found in Evidence Code section 1280. Under it, hearsay may be admitted if the writing was made "by and within the scope of duty of a public employee," "at or near the time of the act, condition, or event," and the "sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1280, subds. (a)-(c); see *Lake* v. *Reed*, *supra*, 16 Cal.4th at p. 467.)

Here, the forensic report was prepared by the Orange County Sheriff-Coroner Department crime laboratory. According to the computer printout, Qui T. Dang and Scott Munroe performed the tests and signed the report. However, on the list supplied by the county's department of health services and submitted to the state, Dang and Munroe are classified as forensic alcohol analyst "trainees." A forensic alcohol analyst trainee is defined in the code of regulations as "a person employed by a forensic alcohol laboratory for the purpose of receiving comprehensive practical experience and instruction in the technical procedures of forensic alcohol analysis under the supervision of a forensic alcohol supervisor or forensic alcohol analyst." (Cal. Code Regs., tit. 17, § 1215.1, subd. (h).) While a trainee "may perform forensic analysis," he or she may do so "only under the supervision of a forensic alcohol supervisor or forensic alcohol analyst." (Cal. Code Regs., tit. 17, § 1216, subd. (a)(1)(A).) Because a trainee is not allowed to perform forensic analysis except when supervised, a trainee cannot be acting "by and within the scope of duty of a public employee" when he or she is not being supervised. Accordingly, a forensic alcohol report prepared by an unsupervised trainee could not fall within the public employee exception to the hearsay rule. (Evid. Code, § 1280.)

The Attorney General concedes this report does not expressly show whether anyone supervised them. However, he argues that since the trainees signed the report under penalty of perjury attesting they complied with title 17 of the California Code of Regulations in performing the tests, this constitutes affirmative evidence that they were properly supervised. That is not logical. A trainee is, by definition, a person "receiving comprehensive practical experience and instruction in the technical procedures of forensic alcohol analysis." (Cal. Code Regs., tit. 17, § 1215.1, subd. (h).) Moreover, a trainee cannot be classified as a forensic alcohol analyst until he or she has, among other things, "[s]uccessfully complete[d] a training period in alcohol analysis" (Cal. Code Regs., tit. 17, § 1216.1, subd. (f)(2)), "[s]uccessfully demonstrate[d] accuracy in the analysis of proficiency test samples submitted by the [California State Department of Health], successfully passe[d] examinations prescribed by the Department" (Cal. Code Regs., tit. 17, § 1216.1, subd. (f)(4)), and "[d]emonstrate[d] ability to adhere to the provisions of these regulations" (Cal. Code Regs., tit. 17, § 1216.1, subd. (f)(5)). Given that these forensic alcohol trainees have not yet successfully completed their training period, passed the state examinations, or shown an ability to adhere to the regulations, we cannot understand how they could possibly be qualified to attest to the foundational fact that they complied with the regulations.

Moreover, the trainees signed the forensic report *attesting under penalty of perjury that they were analysts* when, in truth, they were only trainees.[1] This was a *material misrepresentation* of their qualifications. It is illogical to assume the trainees' representation of compliance with title 17 is proof they were supervised when the forensic report carries on its face a material misrepresentation. (Cf. BAJI No. 2.22.) Or, as Lord Light, the fictional English judge created by A. P. Herbert put it in Rex v. Haddock, "it is like the thirteenth stroke of a crazy clock, which not only is itself discredited but casts a shade of doubt over all previous assertions." (Herbert, Uncommon Law (Eyre Methuen Ltd. 1974), p. 28.) We are also unpersuaded with the Attorney General's backup argument. He asserts the trainees are qualified to attest to the fact they were properly supervised—because they were the ones who were supervised. How persons unqualified to be analysts can attest that an analyst properly supervised them escapes us.

The Attorney General then insists it should be presumed "that official duty has been regularly performed." (Evid. Code, § 664.) In short, he suggests the

---

[1]One of the problems with trainees is that they can make some egregious errors. Recently, one of the trainees in the Orange County laboratory signed a computer printout attesting to having performed a forensic alcohol test on a sample the day before the sample was received by the laboratory. (*Manning* v. *Department of Motor Vehicles* (1998) 61 Cal.App.4th 273 [71 Cal.Rptr.2d 647].)

mere existence of a computer printout from the crime laboratory should suffice to establish all of the necessary requirements. While a supervised trainee is permitted to perform forensic analysis (Cal. Code Regs., tit. 17, § 1216, subd. (a)(1)(A)), nothing in the code of regulations permits a trainee, even a supervised one, to vouch for the accuracy of the forensic alcohol analysis he or she performed; that is the responsibility of the trainee's supervisor. Under the regulations, forensic alcohol analysis is only performed by "trained laboratory personnel" (Cal. Code Regs., tit. 17, § 1215.1, subd. (b)), and forensic alcohol trainees are, by definition, not trained laboratory personnel. Since a trainee has no official duty to report the test results, his or her results are not entitled to the presumption that official duty was performed. (Evid. Code, § 664; see *Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 78-79 [179 Cal.Rptr. 379, 31 A.L.R.4th 905] [presumption based on belief that public officer who has official duty to make an accurate statement will do so]; *Manning* v. *Department of Motor Vehicles, supra,* 61 Cal.App.4th at p. 276, fn. 3.)

Finally, the Attorney General notes the arresting officer listed on the report the objective signs of intoxication he observed. But Shea's license was suspended for driving with a blood-alcohol concentration of 0.08 percent or more. (Veh. Code, § 13353.2, subd. (a)(1).) Only an objective scientific test can establish that fact. (*Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 817, fn. 7 [3 Cal.Rptr.2d 478].) Moreover, reviewing courts should draw "all logical and reasonable inferences in the trial court's favor. . . ." (*Lake* v. *Reed, supra,* 16 Cal.4th at p. 467, citation omitted.) Given that the trial court set aside the license suspension even though it had the arresting officer's report in front of it, we must conclude the trial court found the officer's statements insufficient to establish Shea had a blood-alcohol concentration in excess of the legal limit.

The judgment is affirmed. Shea shall recover his costs on appeal.

Wallin, J., and Crosby, J., concurred.

A petition for a rehearing was denied April 16, 1998, and appellant's petition for review by the Supreme Court was denied June 17, 1998.