[No. G030076. Fourth Dist., Div. Three. Sept. 25, 2002.]

VIKKI LEONE SHANNON, Plaintiff and Appellant, v.
STEVEN GOURLEY, as Director, etc., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 978, this opinion is certified for publication with the exception of part II.C.

**COUNSEL**

Robert Livingston Bullock and Robert J. Herron III for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Silvia M. Diaz and Mark R. Beckington, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**ARONSON, J.**—Vikki Leone Shannon appeals the denial of her writ of mandate challenging the Department of Motor Vehicles' (DMV) suspension of her driver's license. Shannon contends the blood-alcohol test results should not have been admitted into evidence because the requisite foundation had not been established. For the reasons stated below, we affirm.

## I

On October 26, 2000, around 12:30 p.m., California Highway Patrol Officer Sparso was dispatched to investigate an accident. At the scene, Sparso observed a Mazda MX3 partially underneath a Volkswagen's rear bumper. Shannon, sitting in the Mazda's driver's seat, admitted she was the driver and handed Sparso her identification.

Shannon had difficulty standing upon leaving the Mazda, and balanced herself by leaning on Sparso's patrol car. Her speech was slurred and she appeared confused. Sparso smelled alcohol and noticed Shannon had blood-shot and watery eyes. Shannon admitted she had consumed one ounce of vodka and was unable to complete the field sobriety tests because of her poor balance.

Sparso gave Shannon three separate preliminary alcohol screening (PAS) breath tests, using an Alco-Sensor IV machine. The first sample showed her blood-alcohol level was .36 percent. The second sample registered .4 percent or greater, and the final test was .39 percent. Shannon was arrested for driving under the influence and submitted a blood test to determine her blood-alcohol concentration (BAC). The test was analyzed by the crime lab of the Orange County Sheriff. The first analysis was completed by forensic alcohol analyst trainee Robert Patron and the second was done by analyst Amy Goelzer. Shannon's BAC was .41 percent, based on an average of the two blood tests.

Shannon requested an administrative hearing to contest the DMV's suspension of her license. At the hearing, senior forensic scientist Martin Breen testified three senior analysts supervised Patron when he tested Shannon's blood. To Breen, "supervision" did not mean the supervisor had to review every one of the 80 daily tests done by the trainee; rather, it meant senior analysts were available to answer any inquiries from the trainee or handle any problems that surfaced. Breen also described numerous accuracy checks performed by the lab, including equipment calibration before each test "run" and a summary report of each analysis designed to uncover anything "that might be atypical or would suggest something's wrong with the run." Finally, senior analysts review the trainee's report for accuracy.

Shannon objected to the admission of the blood-alcohol test results, claiming trainee Patron was unsupervised. The hearing officer overruled the objection and upheld the suspension of Shannon's driving privileges. Her petition for writ of mandate challenging the DMV's order was denied, and this appeal followed.

II

## A. *Standard of Review*

■ Exercising its independent judgment, the trial court was required to determine whether the weight of the evidence supported the DMV's decision. (*Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1172 [97 Cal.Rptr.2d 451].) As noted above, the trial court denied the writ. On appeal, our function is to determine whether the trial court's findings are supported by substantial evidence. (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) " ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" ' " (*Ibid.*)

## B. *Foundational Requirements*

■ Shannon contends the DMV did not establish the requisite foundation for admission of the BAC evidence. Specifically, she argues the crime lab did not comply with California Code of Regulations, title 17 (title 17) because forensic trainee Patron was "unsupervised."

■ Generally, the foundational showing necessary for the admission of blood-alcohol test results consists of evidence demonstrating the testing device was working properly and a qualified operator correctly administered the test. (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140 [7 Cal.Rptr.2d 818] (*Davenport*).) One way to meet these requirements is to show the test results were obtained by following the standards prescribed for forensic alcohol analysis in title 17. "Compliance with the regulations establishes both a foundation for admission of test results into evidence in any proceeding and a basis for finding such results to be legally sufficient evidence to support the requisite findings in such proceeding." (*Davenport, supra,* 6 Cal.App.4th at p. 142.)

Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. (*Davenport, supra,* 6 Cal.App.4th at p. 143; *McKinney v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525 [7 Cal.Rptr.2d 18].) Test

results from authorized laboratories, performed by public employees within the scope of their duties, are admissible under the public employee records exception to the hearsay rule. (Evid. Code, § 1280; *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 816 [3 Cal.Rptr.2d 478].) The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence. (*Burge v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 389 [7 Cal.Rptr.2d 5].) At this point, "faced with a report of chemical test results, the burden would be on the licensee to demonstrate that the test was not properly performed." (*Imachi, supra,* 2 Cal.App.4th at p. 817.)

 Title 17 permits trainees to analyze blood-alcohol tests, but "only under the supervision of a forensic alcohol supervisor or forensic alcohol analyst." (Tit. 17, § 1216, subd. (a)(1)(A).) Shannon correctly notes the public employee hearsay exception does not apply to unsupervised forensic trainees. If unsupervised, "a trainee cannot be acting 'by and within the scope of duty of a public employee' when he or she is not being supervised. Accordingly, a forensic alcohol report prepared by an unsupervised trainee could not fall within the public employee exception to the hearsay rule." (*Shea v. Department of Motor Vehicles* (1998) 62 Cal.App.4th 1057, 1059 [72 Cal.Rptr.2d 896] (*Shea*); *Manning v. Department of Motor Vehicles* (1998) 61 Cal.App.4th 273, 276 [71 Cal.Rptr.2d 647] (*Manning*).) Because title 17 requires *two* analyses of a single sample (tit. 17, §§ 1215.1, subd. (b), 1220.2, subd. (a)(3)), Shannon contends the test performed by forensic analyst Goelzer was also inadmissible.

We turn to the issue of what constitutes "adequate" supervision. *Shea* and *Manning*, the only published decisions on this subject, touch on the issue but do not confront it directly. In each case, we considered the DMV's evidentiary showing and found it wanting. This case is different—the DMV did produce evidence detailing its efforts to supervise its forensic analyst trainees.

 Thus, the issue is whether substantial evidence supports the trial court's finding that trainee Patron did, in fact, receive adequate supervision. Senior forensic scientist Breen testified he and two other analysts worked in the same lab room as Patron and were available to answer questions or provide direction. Patron was instructed to follow specific guidelines in performing the analysis, and alert the supervisor if any deviations from the guidelines were detected. Breen also explained how the lab's quality control procedures required a comparison of Patron's results with Goelzer's. The results are averaged only if they are within .01 percent of each other. Both analysts compare the final result to their report information before signing off, and a later administrative review checks the final report for accuracy.

Shannon did not offer any evidence to rebut Breen's testimony, arguing instead that title 17 required more direct oversight of the trainee. As the Attorney General points out, title 17 does not define supervision or provide guidelines describing the level of oversight required. But the legislative history of title 17 demonstrates the intensive scrutiny advocated by Shannon is not required. As originally adopted, section 1216, subdivision (a) of title 17 provided, "A trainee may perform forensic alcohol analysis only under the *direct and immediate* supervision of a Forensic Alcohol Supervisor." (Former Cal. Admin. Code, tit. 17, § 1216, subd. (a), Register 70, No. 33 (Aug. 15, 1970) p. 88.4.2, italics added.) A few years later, however, section 1216 was amended to delete the "direct and immediate" language and the statute now specifies the trainee may perform the analysis "only under the supervision of a forensic alcohol supervisor or forensic alcohol analyst." This amendment confirms authorized labs may render effective supervision without requiring supervisors to hover over the shoulders of their trainees.

In sum, there was ample evidence to support the trial court's conclusion that Patron received adequate supervision. We will not reweigh it.

C. ˙ *People v. Williams**

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.

On October 24, 2002, the opinion was modified to read as printed above.

---

*See footnote, *ante*, at page 60.