Filed 7/7/17; pub. order 7/28/17 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. MURPHEY, | D069557 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2015-00017429-CU-WM-CTL) |
| JEAN SHIOMOTO, as Director, etc., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Lisa Schall, Judge.  Reversed and remanded with directions.

Kamala D. Harris and Xavier Becerra, Attorneys General, Chris A. Knudsen, Assistant Attorney General, Christine Mersten and Connie A. Broussard, Deputy Attorneys General, for Defendant and Appellant.

White & Amundson, Daniel M. White; Gregor Law Offices and T. Steven Gregor for Plaintiff and Respondent.

I.

INTRODUCTION

In this appeal, we consider whether the trial court erred in granting a petition for writ of administrative mandate ordering the Department of Motor Vehicles (the Department) to rescind an order suspending the driver's license of a person arrested for driving under the influence (Veh. Code, § 23152, subd. (a))[1] and awarding attorney fees and costs to the person. We reverse the trial court's order granting the writ petition and awarding attorney fees and costs and remand the matter to the trial court with directions to deny the petition in its entirety.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *The arrest and driver's license suspension*

California Highway Patrol Officer M. Oka[2] arrested respondent Matthew D. Murphey for driving under the influence (§ 23152, subd. (a)). The Department issued an order suspending Murphey's driver's license pursuant to the administrative per se law (§ 13353.2).[3] Murphey requested an administrative hearing in order to challenge the

---

[1]   Unless otherwise specified, all subsequent statutory references are to the Vehicle Code.

[2]   Officer Oka's first name does not appear in the record.

[3]   "The administrative per se procedure is the means by which the Department suspends or revokes a motorist's driver's license for driving under the influence or for refusing to submit to a chemical test under the implied consent law. 'The procedure is called "administrative per se" because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration, without

2

suspension. A Department hearing officer held a hearing and issued a written order upholding the suspension. In her order, the hearing officer found that Murphey had driven with a blood alcohol content of .08 percent or higher, as required to sustain the suspension.[4]

B. *Murphey's petition for writ of administrative mandate*

Murphey filed a petition for writ of administrative mandate against Jean Shiomoto, in her capacity as Director of the Department, requesting that the trial court direct the Department to rescind the orders suspending his license.[5] In his petition, Murphey contended that the suspension was invalid because it was not supported by evidence in the administrative record. Specifically, Murphey maintained that the hearing officer erred in relying on Officer Oka's sworn report (DS 367)[6] and Officer Oka's unsworn arrest report (collectively "the Reports") because the Reports contained "physical impossibilities," concerning the time that Murphey's blood was drawn for a blood alcohol test and the time that he was booked into jail. Murphey argued that these

additional evidence of impairment.' " (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 98.)

[4] The hearing officer also found two additional elements needed to sustain the suspension, namely, that Officer Oka had reasonable cause to believe that Murphey was driving a motor vehicle in violation of one of various Vehicle Code provisions (including § 23152) and that Murphey had been lawfully arrested.

[5] While this appeal was pending, Murphey filed an unopposed motion to correct the caption of this appeal. Murphey contended that the trial court's order granting his writ petition incorrectly named the Department as a party. Murphey requested that we correct the caption to reflect Shiomoto in her capacity as Director of the Department as the proper appellant. We correct the caption to reflect the proper appellant. However, we refer to Shiomoto as "the Department" for ease of reference throughout this opinion.

[6] The sworn report is a filled out form issued by the Department. "DS 367" refers to the form number.

"impossibilities" rendered the Reports "unreliable and insufficient to sustain the suspension of [his] driver's license." Murphey also claimed that he was entitled to an award of attorney fees and costs due to the Department's "arbitrary and capricious decision."

The Department filed a return to the petition and a brief in opposition. In its opposition, the Department argued that the undisputed evidence that the Department offered at the administrative hearing established each element necessary under the administrative per se law to suspend Murphey's license. The Department also argued that there was no basis for finding that Murphey had not driven with a prohibited blood alcohol level, "[n]otwithstanding the presence of some error about the precise times of the blood draw and jail booking." Finally, the Department maintained that Murphey's request for attorney fees lacked merit. Murphey filed a reply brief.

The trial court held a hearing on the writ petition. After hearing argument from counsel, the court stated that it would grant the petition for writ of mandate and award Murphey attorney fees and costs.

The court subsequently issued a written order granting Murphey's writ petition and awarding him attorney fees and costs. The court's order states in relevant part:

> "The court, having considered the papers filed both in support of and in opposition to the Petition, the administrative record lodged with the court, the files and records in this action, as well as the arguments of counsel and having exercised its independent judgment on the evidence, has determined and ruled that the Petition is granted because the administrative findings and decision are not supported by the record in this matter."

4

C. *The appeal*

The Department appeals the trial court's order granting Murphey's writ petition and awarding attorney fees and costs.

III.

DISCUSSION

A. *The trial court erred in granting Murphey's petition for writ of administrative mandate*

The Department claims that the trial court erred in granting Murphey's petition for writ of administrative mandate. The Department's primary contention is that the trial court erred in determining that the Reports were inadmissible. The Department further argues that because the Reports were admissible, and because the undisputed evidence established all of the elements necessary to support the suspension of Murphey's driver's license, including that Murphey drove with a blood alcohol level of .08 percent or higher, the trial court erred in granting Murphey's petition directing the Department to rescind the suspension.

1. *Governing law*

a. *Administrative per se proceedings*

In *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1207–1208 (*Coffey*), the Supreme Court reviewed California's administrative per se law (§ 13353.2, et seq.), " 'under which a person arrested for driving under the influence of alcohol, and who is determined to have a prohibited amount of alcohol in his or her blood, must have driving privileges

5

suspended prior to an actual conviction for a criminal offense.' " (*Coffey*, *supra*, at p. 1207.)  The *Coffey* court summarized the administrative per se law as follows:

> "Pursuant to the administrative per se law, '[a]fter either the arresting officer or the [Department] serves a person with a "notice of an order of suspension or revocation of the person's [driver's license]," the [Department] automatically reviews the merits of the suspension or revocation.  [Citation.]  The standard of review is preponderance of the evidence [citation], and the department bears the burden of proof [citations].'  [Citation.]  A driver served with such a suspension notice is entitled to a hearing on request [citation], at which the only issues to be decided . . . are whether the arresting officer had reasonable cause to believe she was driving, whether she was arrested for an enumerated offense, and *whether she was driving with 0.08 percent [blood alcohol content] or higher* [citation].  If the [Department] hearing officer finds these three statutory prerequisites proved by a preponderance of the evidence, the accused's driver's license will be suspended . . . ."[7]  (*Id.* at pp. 1207–1208, italics added.)

b. *The rebuttable presumption that a person drove with a prohibited blood alcohol level*

Section 23152, subdivision (b) provides:

> "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

"Although the statutory language speaks in terms of a 'prosecution,' several Courts of Appeal have held this presumption is not limited to criminal prosecutions but also

---

[7]     In a footnote omitted from the quotation by way of the first ellipses, the *Coffey* court explained that "[s]omewhat different rules apply to those under 21 years of age [citation], those driving commercial vehicles [citation], and those on probation for prior drunk driving convictions [citation]."  (*Coffey*, *supra*, 60 Cal.4th at p. 1208, fn. 9.)

applies in administrative license suspension proceedings." (*Coffey*, *supra*, 60 Cal.4th at p. 1208.)  This court is among the courts that have so held.  (See *Jackson v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 730, 740 (*Jackson*).)  Although the Supreme Court has not decided the issue (see *Coffey*, *supra*, 60 Cal.4th 1198), we follow Court of Appeal precedent concluding that the rebuttable presumption codified in section 23152, subdivision (a) applies to administrative per se proceedings because neither party makes any argument to the contrary.

> 2. *Factual and procedural background*

>> a. *The relevant evidence*

The administrative record[8] contains Officer Oka's sworn report (DS 367), which is mandated by section 13380.  (See pt. II, *ante*.)  The sworn report lists Murphey's name near the top of the form.  The form then states the following preprinted information:

> "On _____ at _____ **AM/PM** in *(City and County)*_____
> CA, the above named driver was: □ Driving: □ observed by this
> officer"

Officer Oka filled in "3/1/15" and "2:50" in the appropriate blanks and circled AM.  Officer Oka then wrote "SAN DIEGO, SAN DIEGO" in the appropriate spaces and checked boxes next to the words "Driving" and "observed by this officer."

---

8      Murphey contends that the administrative record that the Department lodged in this court does not contain the actual documents that were lodged with the trial court. Specifically, Murphey contends that the documents lodged with this court contain highlighting and annotations that were not on the documents in the administrative record in the trial court.  Nevertheless, Murphey states that he "does not object" to the Department's alleged failure to provide the proper record before this court.  Accordingly, we assume for purposes of this decision that the Department has provided an adequate record to permit this court to review its claims on appeal.

The form also contains the following preprinted information:

"**Blood Test Results**     □ Blood Test on _____ AM/PM"[9]
                                                DATE          TIME

Officer Oka checked the box next to "Blood Test," wrote "3/1/15" and "3:57" in the appropriate spaces, and circled AM. Officer Oka signed the form under penalty of perjury on March 1, 2015.

The administrative record also contains Officer Oka's unsworn arrest report. The arrest report indicates that the incident took place at 2:50 a.m. on March 1, 2015. In a portion of the report entitled "CHEMICAL TEST INFORMATION," under the headings "TYPE OF TEST" and "TIME," Officer Oka checked a box next to the word "Blood," and typed "0357." Under "LOCATION WHERE TEST WAS CONDUCTED," the words "SAN DIEGO CHP" are typed. The report also indicates that "PHLEBOTOMIST DAVID CATO" was the person who took the blood sample.

In a narrative portion of the form, Officer Oka stated the following concerning Murphey's arrest and the draw of Murphey's blood for a blood test:

> "Murphey was placed under arrest at approximately 0300 hours. I advised Murphey of implied consent and [he] elected to take the blood test. My partner and I transported Murphey to the San Diego CHP Office for the blood test. At 0357 hours I watched certified Phlebotomist David Cato draw two vials of human blood from start to finish from Murphey's right arm. Upon completion of the blood draw I received possession of the blood packet with the two vials and it remained in my possession until it was booked into the CHP San Diego Area Office for evidence. Murphey was subsequently

---

[9] Although the Department's form refers to a "[b]lood [*t*]*est*" (italics added), it is undisputed that this time is intended to refer to the time of a blood *draw* for a subsequently conducted blood test.

transported to the San Diego Sheriff's Central Jail for booking. Admin[istrative] per se procedures were followed."

The arrest report also states the following. In a box labeled "WHERE BOOKED/CONFINED," the words "San Diego Co. Jail" are typed. In an adjacent box labeled "DATE/TIME," "03/01/2015 0355" are typed, indicating that a law enforcement officer booked Murphey into the jail at 3:55 a.m. In a nearby box, the form also has the word "TIME" printed with "0401" typed next to it, and information pertaining to an "ID" and "LOG." Although not clear from the arrest report, Murphey contends that this latter information indicates that Murphey was issued an "inmate bracelet" at the jail at 4:01 a.m. We assume for purposes of this decision that Murphey is correct. The unsworn arrest report indicates that Officer Oka prepared the report on March 1, 2015 and that a Sergeant J. Aboy reviewed the report the following day.

Finally, the administrative record contains a laboratory report indicating that Murphey's blood alcohol level from the March 1, 2015 incident was .16.

b. *The introduction of the evidence at the administrative hearing*

The Department offered Officer Oka's sworn report, Officer Oka's unsworn arrest report, and the laboratory report in evidence at the administrative per se hearing. Murphey[10] objected to the introduction of each document on the ground that each document was hearsay. Murphey also specifically contended that none of the documents were admissible pursuant to the public employee records exception to the hearsay rule

_____

[10]    Murphey appeared in propria persona at the administrative hearing.

contained in Evidence Code section 1280.[11] The hearing officer overruled all of Murphey's objections and admitted each of the documents in evidence. The hearing officer relied on the Reports in determining that Murphey had driven with a blood alcohol content of .08 percent or higher.[12]

      c. *Proceedings concerning the evidence in the trial court and the trial court's ruling granting Murphey's writ petition*

In his brief in support of his writ petition, Murphey argued that the Reports were "unreliable and inadmissible," and that "physical and temporal impossibilities in the record establish that the Department failed to meet its initial burden of proof." (Formatting omitted.) The People filed an opposition in which they argued that "Murphey has not presented the Court with any reason to conclude his blood draw was made more than three hours after the time he was driving," and that the "slight time variances" in the arrest report did not support granting the writ petition.

The trial court held a hearing at which counsel for the Department argued that the "plainly admissible sworn and unsworn arrest reports" supported denying the petition. Murphey's counsel argued that the Department was required to "establish[ ] the time of

---

[11] The hearing transcript for the administrative hearing also indicates that Murphey filed a legal brief in support of his evidentiary objections. Although that report is not contained in the administrative record lodged on appeal, Murphey states in his brief that he "does not seek augmentation of the record" to include that brief, and presents no argument that the absence of the brief in the record renders the record inadequate to review the Department's appeal.

[12] As noted previously (see pt. II.A, *ante*), the hearing officer also found that Officer Oka had reasonable cause to believe that Murphey was driving a motor vehicle in violation of one of various Vehicle Code provisions (including § 23152) and that Murphey had been lawfully placed under arrest.

the blood draw," and that the Department could not meet its burden to establish this fact because of the "physical impossibilities" in the arrest report.

Near the end of the hearing, the court stated the following:

"I think in this case the hearing officer did not have sufficient weight of evidence to in fact order the suspension. I think that you cannot extrapolate simply from other evidence and presume when we have the introduction of the report writing that is always arguably argued to be valid and accurate in these hearings. This one was really a disparity from the ones I have seen where there are I think scrivener errors. This is a key part of any report taking that should have been considerably more detailed and it wasn't."

Shortly thereafter, the court issued its final ruling, stating:

"I am going to grant the writ of mandate. I am not going to remand it [to the Department for the taking of additional evidence]. I do believe that the opinion that was rendered by the hearing officer was evidence -- there was elements of it showing [an] arbitrary decision-making process. [Murphey is] the prevailing party now and you are entitled to your fees and costs."

3. *The trial court abused its discretion in determining that the Reports were inadmissible*

The Department contends that the trial court erred in determining that Officer Oka's sworn and unsworn reports were inadmissible.[13] We apply the abuse of discretion

_____

[13] It is not entirely clear that the trial court ruled that the Reports were inadmissible and granted the writ petition on this basis, or whether the trial court merely concluded that, even if the Reports were admissible, the weight of the evidence did not support the administrative decision. (See pt. III.A.2.c, *ante* [quoting ruling].) In light of this lack of clarity, we consider whether the order may be affirmed on either ground. (See *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 [" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness' "].) In this section, we assume that the trial court intended to rule that the Reports were inadmissible, and consider whether the court committed reversible error in so ruling. In part III.A.3, *post*, we consider whether the court erred in concluding

11

standard of review to this claim. (See, e.g., *Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1217 (*Miyamoto*) [abuse of discretion standard or review applies to appellant's challenge to trial court's evidentiary ruling in action seeking petition for writ of administrative mandate seeking to overturn the Department's suspension of party's driver's license after administrative per se hearing]; *Lee v. Valverde* (2009) 178 Cal.App.4th 1069, 1075 [same].)[14]

a. *Relevant evidentiary rules*

i. *Evidentiary rules applicable in administrative per se hearings*

In *Miyamoto*, *supra*, 176 Cal.App.4th at pages 1216–1217, the court outlined the rules governing the admissibility of evidence in administrative per se proceedings:

> "The rules governing the evidence available for use in [Department] administrative per se hearings 'are set forth in . . . the Vehicle Code, commencing with section 14100. (§ 14100, subd. (a).) Two provisions are especially relevant. First, . . . section 14104.7 states in pertinent part: "At any hearing, the department shall consider its official records and may receive sworn testimony." . . . Second, for all matters not specifically covered by . . . the Vehicle Code . . . section 14112 incorporates the provisions of the Administrative Procedures Act governing administrative hearings generally. (Gov. Code, § 11500 et seq. . . .)' [Citation.]

that, even assuming the Reports were admissible, the weight of the evidence did not support the administrative decision.

[14] The parties disagree as to the appropriate standard of review to be applied. This disagreement appears to stem from the lack of clarity with respect to the precise nature of the trial court's ruling. (See fn. 13, *ante*.) As explained in footnote 13, we consider both possible bases for the trial court's ruling. In this part, we apply the abuse of discretion standard of review to our review of the trial court's implied determination that the Reports were inadmissible. As explained in part III.A.3, *post*, we apply the substantial evidence standard of review in determining whether the court erred in concluding that the weight of the evidence did not support the hearing officer's decision.

"Government Code section 11513 addresses the admissibility of evidence generally in administrative hearings. [Citation.] It provides in relevant part: '(c) The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. [¶] (d) Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but . . . shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.' (Gov. Code, § 11513, subds. (c), (d).)" (Italics omitted.)

Section 13380, subdivision (a) mandates that "[i]f a peace officer. . . arrests any person for a violation of Section . . . 23152 . . . the peace officer shall immediately forward to the department a sworn report of all information relevant to the enforcement action, including information that adequately identifies the person, a statement of the officer's grounds for belief that the person violated Section . . . 23152 . . . , [and] a report of the results of any chemical tests that were conducted on the person." Section 13380, subdivision (b) provides, "The peace officer's sworn report shall be made on forms furnished or approved by the department."

Where an officer files a sworn statement with the Department, the officer's unsworn arrest report is admissible at the administrative per se hearing to supplement the sworn report. "[I]t is consistent with the relaxed evidentiary standards of an administrative per se hearing that technical omissions of proof can be corrected by an unsworn report filed by the arresting officer." (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 159.)

13

ii. *The public employee record exception to the hearsay rule*

Evidence Code section 1280 provides:

> "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: (a) The writing was made by and within the scope of duty of a public employee. (b) The writing was made at or near the time of the act, condition, or event. (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

"Assuming satisfaction of the exception's other requirements, '[t]he trustworthiness requirement . . . is established by a showing that [a police officer's] written report is based upon the observations of public employees who have a *duty* to observe the facts and report and record them correctly.' " (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 640 (*Gananian*), fn. omitted [stating that a police officer's sworn report qualifies as an admissible public record under Evidence Code section 1280 in an administrative per se proceeding even to the extent that it reports *a second* officer's observations because the second officer "was acting pursuant to his duty as a police officer to observe the facts and report them correctly" (*Gananian*, *supra*, at p. 641)].)

iii. *The presumption in favor of the performance of an official duty*

Evidence Code section 664 provides:

"It is presumed that official duty has been regularly performed."

In an administrative per se proceeding, "An officer's statement relating firsthand observations meets [the criteria outlined in Evidence Code section 1280] and ' "the statutory presumption of duty regularly performed (Evid. Code, § 664) shifts the

14

foundational, method-of-preparation burden in this situation," ' requiring the licensee to show that the officer failed in his or her duty to observe and correctly report the events described in the statement." (*Santos v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 547 (*Santos*); accord *Morgenstern v. Department of Motor Vehicles* (2003) 111 Cal.App.4th 366, 373 (*Morgenstern*) ["Where it is applicable, the presumption [in Evidence Code section 664] shifts the burden of proof to the party against whom it operates to establish the nonexistence of the presumed fact"].)

      b.  *Application*

The Department contends that the Reports were admissible pursuant to the public employee record exception to the hearsay rule. (See Evid. Code, § 1280.) There is no dispute that the Reports were "made by and within the scope of duty of a public employee" (Evid. Code, § 1280, subd. (a)), and were "made at or near the time of the act, condition, or event" (Evid. Code, §1280, subd. (b)).

With respect to the final element necessary to establish the admissibility of the Reports pursuant to the exception, whether the "sources of information and method and time of preparation were such as to indicate its trustworthiness" (Evid. Code, §1280, subd. (c)), the Reports were based on Officer Oka's personal observations,[15] the statements were recorded on official forms, and the statements were drafted near the time

---

[15]    We reject Murphey's circular contention that the " 'sources of information,' for the *statements* in the Reports about the time of the blood draw are Officer Oka's *recitation of times and places*." (Italics added.) The "sources of information" (Evid. Code, § 1280, subd. (c)) for the statements in the Reports are not the statements themselves (as Murphey appears to contend), but rather, as we state in the text, Officer Oka's personal observations.

of the events in question. Thus, the Reports were presumptively admissible. (See

*Gananian*, *supra*, 33 Cal.App.4th at p. 642 [" ' "[t]he trustworthiness requirement [of

Evidence Code section 1280] . . . is established by a showing that [a police officer's]

written report is based upon the observations of public employees who have a *duty* to

observe the facts and report and record them correctly" ' "]; *Santos*, *supra*, 5 Cal.App.4th

at p. 547 [stating that an officer's statement based upon personal observations satisfies

Evidence Code section 1280 and the statutory presumption of duty regularly performed

(Evid. Code, § 664) shifts the burden to a licensee to demonstrate that the officer failed in

his duty to observe and correctly report events in the statement].)[16]

The trial court appears to have agreed with Murphey that the Reports were

inadmissible because they were untrustworthy. In his brief in the trial court, Murphey

contended that the Reports were "unreliable and inadmissible" because the physical

distance between the Central Jail and the CHP station demonstrated that statements in the

unsworn arrest report that Murphey was booked into *jail* at 3:55 a.m., his blood was

drawn at the *CHP Station* at 3:57 a.m., and he received an ID bracelet from the *jail* at

4:01 a.m. could not be accurate.[17] For the following reasons, the trial court abused its

discretion in implicitly accepting this argument.

---

[16]    It is undisputed that Murphey presented no other evidence at the administrative
hearing upon which the trial court could have reasonably determined that the presumption
in favor of admissibility had been rebutted.

[17]    Although Murphey does not cite to anything in the record establishing the location
of the Central Jail or the CHP Station, we assume for purposes of this decision that
Murphey is correct that it would be physically impossible for him to be booked into the

16

Most fundamentally, any inaccuracy in the arrest report as to the time that Murphey was booked into jail (or had his blood drawn) was not material with respect to any of the elements that the Department was required to establish at the administrative per se hearing. Specifically, any such inaccuracy did not provide any reasonable basis for determining that Murphey's blood was not drawn within three hours of him having driven, and therefore, did not undermine the presumption that he had driven with a prohibited blood alcohol content (§ 23152, subd. (b)). More specifically, it is unreasonable to determine that any error with respect to the *exact* times that Murphey was booked into jail or had his blood drawn rendered the report untrustworthy with respect to whether Murphey's blood was drawn *within three hours* of him driving, because the times stated in the arrest report with respect to the booking and blood draw *both* were *well* within three hours of Officer Oka having witnessed Murphey driving.[18] Thus, the Reports constituted evidence that Murphey "had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after . . . driving," and thus established "a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle." (§ 23152, subd. (b).)

---

Central Jail at 3:55 a.m., for his blood to be drawn at the CHP Station at 3:57 a.m., and for him to have an identification bracelet issued at the Central Jail at 4:01 a.m.

[18] As noted previously, the arrest report stated that Officer Oka observed Murphey driving at approximately 2:50 a.m. and that Murphey was booked into jail an hour and five minutes later, at 3:55 a.m., and that his blood was drawn an hour and seven minutes after he was seen driving at 3:57 a.m.

17

This is *not* a case in which the reported booking time and blood draw time were near the three-hour time window referred to in section 23152, subdivision (b). If that were the case, and if it were physically impossible for both times to be exactly accurate, an argument could be made that such inaccuracy would make it reasonable for a trial court to exercise its discretion in excluding the report.[19] However, in this case, even assuming that Murphey is correct that it would be "physically impossible" for Murphey to have been booked into the Central Jail at 3:55 a.m. and had his blood drawn at the CHP Station two minutes later at 3:57 a.m., such impossibility suggests only that Officer Oka may have actually observed Murphey's blood being drawn *slightly earlier* or *slightly later* than 3:57 a.m. (approximately an hour and ten minutes after having observed him drive). It is *unreasonable* to determine that the arrest report is *inadmissible* on the ground that the error with respect to the recording of the exact times that these two events occurred in the arrest report demonstrates that the actual time that Officer Oka observed the blood draw may actually have been *more than* three hours after the observation of driving (i.e., *after 5:50 a.m.*).

This is particularly true since the narrative portion of Officer Oka's arrest report makes clear that Officer Oka observed Murphey having his blood drawn *before* Murphey

---

19    A counter argument would be that any such inaccuracies go to the weight, rather than the admissibility of the Reports. (See *Santos*, *supra*, 5 Cal.App.4th at p. 549 ["While the absence of evidence of the time [licensee's] blood sample was taken did not render the test result inadmissible, without such evidence the Department simply could not meet its burden of proof"].) However, we need not decide this question in this case because there is *no* evidence from which a reasonable person could find that the testing occurred *more than* three hours after Murphey had driven.

was transported to the jail. It was thus unreasonable for the trial court to have implicitly determined that the arrest report is untrustworthy with respect to whether Officer Oka observed Murphey having his blood drawn within three hours of having seen Murphey drive (§ 23152, subd. (b)), given that the arrest report indicates that Murphey was booked into jail approximately *an hour and five minutes* after driving and that his blood was drawn *before* being taken to jail. It was even more unreasonable to determine that the *sworn* report, which states that the blood test occurred at 3:57 a.m. and has *no* information suggesting any inaccuracy with respect to this time, was also inadmissible.[20]

The unreasonableness of the trial court's determination that the Reports were inadmissible is further supported by the fact that case law is clear that the Department need not establish the exact time that a chemical test is administered as long as it may reasonably be inferred that the test was administered within three hours of the licensee having driven. (See *Jackson*, *supra*, 22 Cal.App.4th at p. 740 ["Although there was no direct evidence of the time of driving, reasonable inferences supported a finding the chemical test indicating a blood-alcohol level of .08 percent was performed within three hours of Jackson's driving and thus invoked the statutory presumption"]; *Burge v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 390 (*Burge*) [evidence in administrative record supported determination that intoxilyzer test was given within an hour of first observation of driver despite the fact that Department's evidence did not contain an express statement as to the time test was given].) In this case, for the reasons

---

20    It also bears emphasizing that the sworn and unsworn report both indicated that Murphey was driving at 2:50 a.m. and had his blood drawn at 3:57 a.m.

stated above, the *only* reasonable finding based on the evidence in the record is that the blood draw occurred within three hours of Murphey having driven.

None of the cases that Murphey cites in his brief supports a different result. *Manning v. Department of Motor Vehicles* (1998) 61 Cal.App.4th 273 (*Manning*), on which Murphey principally relies, involved an error that was of an entirely different magnitude from the error involved in this case. In *Manning*, the Court of Appeal stated that an error on a laboratory report was so significant that "*the logical inference is the test results are someone else's, not Manning's.*" (*Id.* at p. 275, fn. 2, italics added.) The *Manning* court described the error as follows:

> "At the administrative per se hearing Manning objected to the admission of the forensic report on various evidentiary grounds. Relevant to this appeal, he pointed out that the . . . forensic test was supposedly performed by Debra Eck, a forensic alcohol supervisor, on October 25, 1993. However, the computer printout states the urine sample was not submitted to the laboratory until the following day, October 26. The DMV did not offer any evidence to rebut Manning's claim, and thus the question is whether a forensic report, which discloses a patent physical impossibility on its face, ' "is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." ' [Citation.] We don't think so. Even in the relaxed evidentiary world of administrative per se hearings, a forensic report must reflect some relationship with the physical world we know." (*Id.* at p. 275.)

In this case, in contrast, any mistake with respect to the precise moment that Murphey was booked into jail (or when his blood was drawn) on the arrest report does not support an inference that the test results do not pertain to Murphey or that the results of the laboratory test are unreliable for any other reason. In short, *Manning* does not support exclusion of the Reports.

20

In *Santos*, *supra*, 5 Cal.App.4th 537, a second case relied upon by Murphey, the Court of Appeal concluded that there "was no basis for an inference that [a licensee's] blood-alcohol level was 0.08 or more percent at the time of driving" because there was a "complete absence of evidence as to when [licensee's] blood was drawn." *(Id.* at pp. 549–550.) For the reasons described above, it is not reasonable to conclude that there was a "complete absence of evidence" *(ibid.)* as to when Murphey's blood was drawn in this case. On the contrary, both the sworn and unsworn reports expressly state that Murphey's blood was drawn at 3:57 a.m. Any inaccuracies as to the precise time at which Murphey was booked into jail or his blood was drawn were not material to the determination of whether Murphey had a blood alcohol level that was 0.08 or more percent at the time of driving because it is clear from the Reports that the jail booking and the blood draw both occurred well within three hours of Officer Oka having observed Murphey driving.

Accordingly, we conclude that the trial court committed reversible error in determining that Officer Oka's sworn and unsworn reports were inadmissible. [21]

> 4. *The trial court erred in finding that the weight of the evidence did not support the hearing officer's decision to uphold the suspension*

The Department contends that because the Reports were admissible, the undisputed evidence established each element necessary to suspend Murphey's license. We interpret this argument as a contention that, even assuming that the trial court ruled

---

[21] It is clear that the trial court's error in determining that the Reports were inadmissible requires reversal because the Reports were the critical evidence supporting the hearing officer's decision upholding the suspension of Murphey's driver's license.

that the Reports were admissible, the trial court erred in finding that the weight of the evidence did not support the hearing officer's decision to uphold the suspension.[22]

### a. *Governing law and standard of review*

In *Morgenstern*, *supra*, 111 Cal.App.4th at page 372, this court outlined the law governing a driver's contention that the Department's suspension of his license is not supported by the weight of the evidence:

> "Where, as here, the driver petitions for a writ of administrative mandate following an order of suspension, the superior court is required to determine, based on the exercise of its independent judgment, whether the weight of the evidence supports the administrative decision. [Citation.] In reviewing the administrative record, the court makes its own determination about the credibility of the witnesses. [Citation.]
>
> "On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence, resolving all evidentiary conflicts and drawing all legitimate and reasonable inferences in favor of the trial court's decision."

Notwithstanding this "daunting"[23] standard, numerous reviewing courts have applied this standard of review in reversing a trial court's order granting a writ of administrative mandate where the evidence that the Department offers is reliable and the

---

22    Although the Department's brief could have framed its appellate claim with greater clarity, the trial court's order granting the writ petition is itself not entirely clear as to the basis of the court's decision. (See fn. 13, *ante*.) We have framed the Department's contention in accordance with our duty to indulge all presumptions in favor of the order and to determine whether the order may be affirmed on any ground.

23    We quote from Murphey's brief. Although based on cases outside of the administrative per se context, we agree with Murphey's contention that an application of this standard of review requires us to determine whether " 'the evidence was so overwhelmingly one-sided that no reasonable factfinder could find against the [Department].' "

licensee presents no contrary evidence. For example, in *Morgenstern*, this court determined that the presumption in Evidence Code section 664 established the reliability of breath test results introduced at an administrative per se hearing. (*Morgenstern*, *supra*, 111 Cal.App.4th at p. 377.) This court then concluded, "Because Morgenstern failed to introduce evidence rebutting the presumption or contradicting the [Department's] evidence, the [Department] properly suspended his driver's license and the trial court erred in ordering the [Department] to vacate its suspension order." (*Ibid.*)

Similarly, in *McKinney v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 519 (*McKinney*), the Court of Appeal reversed a trial court's judgment granting a writ of mandate in a case in which the trial court "found that the administrative order was not supported by the weight of the evidence because the hearing officer had no evidence of the time that McKinney was observed *driving* the vehicle." (*Id.* at p. 523.) The *McKinney* court reasoned:

> "The hearing officer was not constrained to consider only direct evidence but could draw inferences and deductions of fact from the facts before him. [Citation.] In the absence of any indication that there was a significant delay between the observation and the stop, and in view of the proximity between where the unusual driving was observed and the point where McKinney was stopped and arrested, the hearing officer could rationally infer that McKinney was driving in an inebriated condition shortly prior to the 2:25 a.m. arrest. The trial court erred in finding that, without the officer's express declaration as to the time of driving, there was insufficient evidence to support the suspension. Since this was the sole basis for the court's decision, the judgment must be reversed." (*Id.* at p. 524.)

In *Burge*, *supra*, 5 Cal.App.4th 384, the Court of Appeal applied the substantial evidence standard of review (*id.* at p. 388), on facts extremely similar to those in this case

23

in reversing a judgment granting a writ of mandate. The *Burge* court rejected a licensee's contention that the Department presented insufficient evidence at the administrative per se hearing to justify a suspension. (*Id.* at pp. 390–391.) The licensee had claimed that the evidence supporting his suspension was insufficient because a police officer's sworn statement did not include a statement as to the time an intoxilyzer test had been given and thus did "not establish that [the licensee's] blood-alcohol concentration exceeded .08 percent at the time that he was driving." (*Id.* at p. 390.) As explained previously (see pt. III.A.3.b, *ante*), the *Burge* court rejected this argument because there was evidence in the administrative record that supported the determination that test was given within an hour of the time that law enforcement officers first observed the licensee. (*Id.* at p. 390.) After rejecting this argument, and concluding that that the presumption in section 23152, subdivision (b) applied, the *Burge* court held that the trial court erred in granting a writ of mandate on the ground that the Department had failed to carry its burden of proof:

> "The [Department] . . . made a prima facie showing at the administrative hearing that Burge had been driving with a blood-alcohol concentration in excess of .08. The burden then shifted to Burge to dispute that showing, if he could. Burge submitted no evidence. The superior court therefore was without basis to find that the [Department] had failed in its burden of proof." (*Burge*, *supra*, at p. 391.)

b. *Application*

As discussed in detail in part III.A.3, *ante*, the Department presented reliable and trustworthy evidence that Murphey's blood was drawn within three hours of Murphey having driven. The results of the blood test based on the blood taken from that draw demonstrated that Murphey had a blood alcohol level of .16 (twice the limit specified in

24

section 13352.2, subd. (a)).[24] In addition, for the reasons stated in part III.A.3, *ante*, no reasonable fact finder could find that any uncertainty with respect to the precise time that Murphy's blood was drawn could have any material impact on whether he had been driving with a blood alcohol level of .08 percent or higher. Further, Murphey did not present any *other* evidence from which a reasonable fact finder could find that the Department had not established that Murphey had been driving with a blood alcohol level in excess of .08. Under these circumstances, the trial court "was without basis to find that the [Department] had failed in its burden of proof." (*Burge*, *supra*, 5 Cal.App.4th at p. 391.)

Accordingly, we conclude that the trial court erred in finding that the weight of the evidence did not support the hearing officer's decision to uphold the suspension of Murphey's driver's license.

B.  *The trial court's award of attorney fees and costs must be reversed*

The People contend that the trial court erred in awarding Murphey attorney fees and costs.

In its order granting Murphey's writ petition, the trial court determined that Murphey was entitled to attorney fees pursuant to Government Code section 800 and costs, as the prevailing party. Government Code section 800, subdivision (a)

---

24     Section 13353.2, subdivision (a) provides in relevant part:

"The department shall immediately suspend the privilege of a person
to operate a motor vehicle for any one of the following reasons:
(1) The person was driving a motor vehicle when the person had
0.08 percent or more, by weight, of alcohol in his or her blood."

25

provides in relevant part, "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law . . . if it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity, *the complainant if he or she prevails in the civil action* may collect from the public entity reasonable attorney's fees." (Italics added.)

In light of our reversal of the trial court's order granting the petition for writ of administrative mandate, we necessarily must reverse the award of attorney fees and costs because Murphey is no longer the prevailing party.[25]

IV.

DISPOSITION

The trial court's order granting Murphey's petition for writ of administrative mandate and awarding attorney fees and costs is reversed. The matter is remanded to the trial court with directions to deny the petition in its entirety. Murphey is to bear costs on appeal.

---

[25] Accordingly, we need not consider the Department's additional arguments in support of reversal of the trial court's order awarding fees and costs. Nor need we consider Murphey's contention that the hearing officer acted arbitrarily and capriciously by stating that the blood draw occurred at *3:59 a.m.* on *March 2, 2015*, rather than *3:57 a.m.* on *March 1, 2015* as stated in the Reports, and that such purported arbitrary decision-making supports the attorney fees and costs award.

26

AARON, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. MURPHEY, | D069557 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2015-00017429-CU-WM-CTL) |
| JEAN SHIOMOTO, as Director, etc., | |
| Defendant and Appellant. | ORDER GRANTING PUBLICATION |

THE COURT:

The opinion in this case filed July 7, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to: All parties